HATHAWAY, J.
(dissenting). At issue is the extent of liability imposed under two statutes, MCL 600.2922a and MCL 600.2922, for wrongful or negligent acts against a pregnant woman that result in injuries to or the death of a fetus. The majority holds that plaintiffs’ claims for negligence brought under MCL 600.2922a, which provides a cause of action for injuries to or the death of a fetus, fail as a matter of law. The majority believes that MCL 600.2922a only imposes liability for negligent conduct when the conduct complained of consists of an “affirmative” act rather than an “omission.” The majority further holds that claims brought under the wrongful-death statute, MCL 600.2922, as amended by 2005 PA 270, fail because the majority believes that the 2005 amendment of the statute, incorporating the death of a fetus, is not retroactive. Because I find both of these conclusions erroneous, I respectfully dissent.
The underlying claims in this case involve allegations of negligence resulting in the death of plaintiff Baby Johnson,[1] as well as injuries to his mother, plaintiff *442 Candice Johnson. Ms. Johnson had a history of miscarriages resulting from a condition known as an incompetent cervix. Treatment for this condition includes placement of a cerclage, which involves suturing the lower end of the uterus to strengthen it and prevent miscarriages. Ms. Johnson had multiple previous pregnancies, and in each pregnancy in which a cerclage was not placed, she miscarried; however, in her last three pregnancies, a cerclage was used, and she was able to carry her children to full-term. Defendant Rajan Pastoriza, M.D.,[2] was briefly involved in Ms. Johnson’s last pregnancy and had removed the cerclage before the successful birth of her last full-term child.
Ms. Johnson became pregnant with Baby Johnson in June 2005 and chose defendant as her obstetrician. In September 2005, Ms. Johnson began bleeding vaginally and went to Foote Hospital, where she was advised to follow up with defendant. Defendant failed to place a cerclage during that follow-up visit. Ms. Johnson continued treatment with defendant as instructed, but he never placed a cerclage, despite ultrasound findings that Baby Johnson was the appropriate gestational age for placement of a cerclage. On October 19, 2005, Ms. Johnson complained to defendant that she felt preterm labor-like cramping. On this occasion, she specifically asked defendant to place a cerclage, but he refused to do so.
On November 1, 2005, Ms. Johnson went into premature labor. She was transferred to Sparrow Hospital where an emergency cerclage was placed. However, the *443 cerclage failed to prevent the miscarriage. Baby Johnson was delivered at 20 weeks’ gestation and did not survive. Plaintiffs alleged that the cerclage was placed too late to be effective in preventing the miscarriage and that Baby Johnson died as a result of defendant’s refusal to place the cerclage at an earlier time. Ms. Johnson also alleged that the failed emergency cerclage caused a significant and permanent cervical tear that will prevent her from having any more children.
Only counts II and III of plaintiffs’ third amended complaint are at issue in this appeal.[3] Count II, brought by Ms. Johnson, is based on MCL 600.2922a, which provides for liability for injuries to or the death of a fetus caused by a wrongful or negligent act against a pregnant individual. Count III, on behalf of Baby Johnson, was brought under MCL 600.2922a and the wrongful-death statute, MCL 600.2922. The trial court denied defendant’s motions for summary disposition, and the Court of Appeals affirmed. I believe that the trial court and the Court of Appeals reached the correct result with respect to both of these issues.
With regard to the claims brought under MCL 600.2922a, the majority opines that those claims fail as a matter of law because it believes that this statute only imposes liability for negligent or wrongful conduct consisting of an affirmative act, rather than an omission. I disagree with the majority’s conclusion that the conduct complained of in this case was an omission. Instead, defendant’s conduct involved affirmative acts. *444 As such, it is unnecessary to reach the issue whether liability can be based on an omission under this statute.
MCL 600.2922a(l) provides in relevant part:
A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus.
According to the plain language of this subsection, the relevant inquiry is whether a person has committed a wrongful or negligent act against a pregnant individual. This case involves conduct, consisting of medical treatment by a physician, which is alleged to be “wrongful” or “negligent.” The specific allegation is that Ms. Johnson needed a cerclage, defendant was aware of her need for the procedure, and he made a conscious decision not to perform that treatment. On one occasion, after having been asked to place the cerclage, defendant specifically refused to perform the procedure. Thus, the salient question is whether a defendant’s active decision-making process in refusing to perform a necessary and specifically requested medical procedure is properly characterized as an omission or whether it is, in fact, an affirmative act. I believe that an active decision-making process clearly involves an affirmative act.
To hold otherwise ignores the language of the statute and the obvious intent of the Legislature. MCL 600.2922a imposes liability when a person “commits a wrongful or negligent act. . . .” This defendant committed “an act” when he consciously and actively refused to perform the procedure. An active, conscious decision is not an omission. Thus, I agree with the Court of Appeals’ conclusion that “[i]t is improper in this instance to classify defendants’ alleged conduct as an omission” and that “conduct in denying the requested *445 care is tantamount to an affirmative act.”[4] Accordingly, I believe that plaintiffs’ claims under MCL 600.2922a may proceed.
The majority also addresses the claims brought under the wrongful-death statute on behalf of the estate of Baby Johnson. The relevant portion of the wrongful-death statute, MCL 600.2922(1), as amended by 2005 PA 270, currently provides in pertinent part:
Whenever the death of a person, injuries resulting in death, or death as described in section 2922a shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or death as described in section 2922a, and although the death was caused under circumstances that constitute a felony. [Emphasis added.]
At the time of the alleged negligence, MCL 600.2922(1) did not include the language regarding “death as described in section 2922a,” which is now twice cross-referenced in this subsection. This amendatory language was added in 2005 to specifically incorporate fetal deaths into the purview of actionable claims that can be pursued under the wrongful-death statute. The effective date of the amendatory act was in December 2005, the month following the death of Baby Johnson. The majority opines that because the negligent acts complained of occurred before the effective date of the amendatory act, the claims for Baby Johnson must fail because the amendatory act was not retroactive. I disagree. I believe that the Court of Appeals correctly analyzed this issue and properly *446 found that the amended version of the wrongful-death statute applies retroactively.
To determine whether a statute should be applied prospectively or retroactively, the primary rule is that the intent of the Legislature controls, and all other rules of construction are subservient to this rule. Frank W Lynch & Co v Flex Technologies, Inc, 463 Mich 578, 583; 624 NW2d 180 (2001). Generally, statutes are presumed to operate prospectively unless a contrary intent is expressed. Id. However, there is a long-recognized exception when a statute is deemed remedial or procedural in nature. Hansen-Snyder Co v Gen Motors Corp, 371 Mich 480, 484-485; 124 NW2d 286 (1963). “Statutes which operate in furtherance of a remedy already existing and which neither create new rights nor destroy existing rights are held to operate retrospectively, unless a contrary legislative intention is manifested.” Selk v Detroit Plastic Prod, 419 Mich 1, 10; 345 NW2d 184 (1984).
The 2005 amendment of MCL 600.2922(1) incorporated fetal deaths, as described in MCL 600.2922a, into the purview of the wrongful-death statute. By amending MCL 600.2922(1), the Legislature did not create a new right because the right to bring a cause of action based on wrongful or negligent acts that resulted in the death of a fetus already existed under MCL 600.2922a. This clearly delineated statutory right contained in MCL 600.2922a was seemingly disregarded or at least overlooked in McClain v Univ of Mich Bd of Regents, 256 Mich App 492; 665 NW2d 484 (2003). McClain held that an action for wrongful death could not be brought on behalf of a nonviable fetus. The Court opined that because a nonviable fetus is not a “person” within the meaning of the wrongful-death statute, such an action could not proceed. Id. at 495. However, McClain failed *447 to address or acknowledge the rights embodied in MCL 600.2922a, which permits a cause of action for injuries to or the death of a fetus irrespective of whether the fetus was viable. In doing so, McClain effectively abrogated the rights given to nonviable fetuses in MCL 600.2922a. Thus, it appears that the purpose of the 2005 amendment was merely to clarify the legislative intent that a cause of action could be brought on behalf of a nonviable fetus.
This conclusion is buttressed by the following legislative history[5] from the House Fiscal Agency’s analysis of the amendatory act:
Prior to 1998, the Michigan law did not specifically speak to the right of an individual to sue if the death in question was that of the unborn. Historically, lawsuits through the years went back and forth, sometimes applying regardless of gestational age, then more recently, being limited to instances in which the fetus was viable. Legislation in 1998 sought to settle the question by establishing both civil liability and criminal penalties for conduct against a pregnant woman that caused a miscarriage or stillbirth or that caused physical injury to the embryo or fetus (Public Act 211 — civil and Public Act 238 — criminal).
The language establishing the civil penalty was placed in a separate section (MCL 600.2922a) from the existing wrongful death provision (MCL 600.2922) as a compromise between pro-life and pro-choice advocates. Since Section 2922 specifies a right to recover damages for the wrongful death of a “person,” pro-choice advocates voiced a concern that including conduct against a pregnant woman in that section would, by association, attach “personhood” to a *448 fetus or embryo and subsequently could be used to attack laws protecting reproductive rights.
Many thought the 1998 legislation was clear, but a 2000 Oakland County case proved otherwise. The Oakland County Circuit Court ruled that a man who had killed his pregnant wife could not be charged with the death of his wife’s embryo because his actions did not “technically” result in either a miscarriage or a stillbirth as the embryo was not expelled from the wife’s body. As a result, Public Act 2 of 2001 and Public Act 164 of 2002 were enacted to amend the Michigan Penal Code and the wrongful death statute, respectively, to extend the criminal and civil penalties to conduct causing the death of an embryo or fetus. It was believed at the time that Public Act 164 closed the loophole in the wrongful death statute and so would apply to all situations in which conduct toward a pregnant woman resulted in the death of the embryo or fetus she carried.
However, in subsequent civil actions, courts around the state have apparently only looked at Section 2922 of the wrongful death statute and not Section 2922a. Most notably, in McClain v University of Michigan Board of Regents, 256 Mich App 492 (2003), the court held that “under Michigan law, an action for wrongful death, MCL 600.2922, cannot be brought on behalf of a nonviable fetus, because a nonviable fetus is not a ‘person’ within the meaning of the wrongful-death act.”

Once again, it has become clear that legislation is needed to clarify the legislature’s intent of providing a cause of action for the wrongful death of not only a person, but also an embryo or fetusS

[6]

These comments make clear that this amendment was intended to clarify that claims for the wrongful death of a nonviable fetus may be pursued under the wrongful-death statute. The amendatory act did not establish any new rights because the right to pursue an *449 action for the death of a fetus already existed under MCL 600.2922a. The 2005 amendment of the wrongful-death statute was only adopted to resolve the confusion created by McClain regarding whether a claim may be brought for the death of a nonviable fetus.
Thus, I agree with the Court of Appeals’ conclusion that “it is clear that MCL 600.2922 was amended to add the language ‘or death as described in section 2922a’ in order to clarify both MCL 600.2922 and MCL 600.2922a and to resolve a controversy regarding their meaning.”[7] Under these circumstances, I am persuaded that the Legislature intended the amended version of the wrongful-death statute to apply retroactively. As such, Baby Johnson’s estate, as a matter of law, is entitled to proceed with its wrongful-death claim. Whether plaintiffs’ allegations will ultimately prevail on the merits involves issues to be resolved by a jury.
Therefore, I believe that the trial court’s denial of defendant’s motions for summary disposition was proper. I would affirm the Court of Appeals. Accordingly, I dissent.

 This action was originally filed in the name of two plaintiffs, Baby Johnson and Candice Johnson. The complaint was subsequently amended, identifying the decedent, Baby Johnson, as Ordane Michael Johnson, and adding a count on behalf of the estate of Ordane Michael Johnson. To avoid confusion, I refer to the decedent as Baby Johnson.

 Plaintiffs brought suit against Rajan Pastoriza, M.D., in his individual capacity and against his professional corporation. Plaintiffs’ allegations center on the actions of Dr. Pastoriza in his individual capacity. Accordingly, I use the singular term “defendant” throughout this opinion for ease of reference.

 Count I, alleging medical malpractice for Ms. Johnson’s injuries, is not at issue in this appeal. Additionally, the majority’s opinion does not address Ms. Johnson’s claim for emotional-distress damages. See ante at 421 n 2. The Court of Appeals ruled in favor of Ms. Johnson on the issue of whether she can recover emotional-distress damages. The majority opinion does not affect that ruling.

 Johnson v Pastoriza, 290 Mich App 260, 273; 810 NW2d 42 (2010).

 An analysis of a statute’s legislative history is an important tool in ascertaining legislative intent. Bush v Shabahang, 484 Mich 156, 168; 772 NW2d 272 (2009); In re MCI Telecom, Complaint, 460 Mich 396, 415; 596 NW2d 164 (1999).

6 House Legislative Analysis, HB 4777, October 24,2005, p 1 (emphasis added).

 Johnson, 290 Mich App at 271.