HOWARD *v.* BURTON.

SIMPSON *v.* SAME.

THOMAS *v.* SAME.

1. FALSE IMPRISONMENT—POISONING—EVIDENCE.
   That 3 plaintiffs, or any of them, were responsible for allegedly poisoned medicine on a previous occasion which was referred to in police report incident to the arrest of plaintiffs for murder of a 6-months-old baby *held,* not disclosed by any competent testimony in action for false arrest and imprisonment.

2. SAME—FALSE REPORT—PARTICIPATION IN ARREST—EVIDENCE.
   Jury's finding in plaintiffs' actions for false arrest and imprisonment that defendant had done more than merely report what he believed to be the commission of a crime without any knowledge whatsoever that a crime had been committed and acting

REFERENCES FOR POINTS IN HEADNOTES

[2]  22 Am Jur, False Imprisonment §§ 32, 33.
[2]  False imprisonment: Liability of private citizen for false arrest by officer.  21 ALR2d 643.
[3, 4]  41 Am Jur, Pleading §§ 293, 309.
[4]  3 Am Jur, Appeal and Error §§ 959, 964.
[5, 6]  53 Am Jur, Trial §§ 75, 76.
[7]  39 Am Jur, New Trial § 203.
[8]  22 Am Jur, False Imprisonment § 126 *et seq.*

solely upon his own suspicions and initiative, proceeded to give false information and actively participated in the subsequent arrests of plaintiffs *held*, supported by sufficient testimony.

3. PLEADING—AMENDMENT—DISCRETION OF COURT.
   Permission to amend declaration during course of trial to conform to the proofs rather than opening statement to which defendant in action for false arrest and imprisonment had objected was within discretion of trial court and did not result in error, where trial court permitted amendment to avoid any question as to sufficiency of declaration.

4. APPEAL AND ERROR—AMENDMENT OF PLEADINGS—DISCRETION OF COURT.
   The Supreme Court will not interfere with the exercise of a trial court's discretionary power to allow or refuse an amendment of a pleading unless the discretion is abused.

5. TRIAL—QUESTIONING OF WITNESSES BY COURT — POINTLESS REMARKS.
   Trial judge's participation in questioning of witnesses and pointless remarks during course of trial, *held*, not to have constituted prejudicial and reversible error.

6. SAME—INTERFERENCE WITH TRIAL BY JUDGE.
   A trial judge should permit counsel to try a case and not repeatedly interfere by questioning a witness.

7. NEW TRIAL—OPINIONS—COURT RULE.
   An opinion by the trial judge in denying a motion for a new trial is desirable and the proper practice but the court rule calling for such an opinion is directory and not mandatory and reversal will not be ordered merely for a trial judge's failure to file such an opinion (Court Rule No 47, § 3 [1945]).

8. DAMAGES — FALSE IMPRISONMENT — REMITTITURS — EXCESSIVE JUDGMENT.
   Judgments for $2,500, $2,500 and $3,000 for plaintiffs in 3 consolidated actions for false arrest and imprisonment, as reduced by remittiturs from verdicts of $5,000 for each plaintiff are not further reduced on defendant's claim judgments were still excessive, since the law provides no exact standard for measuring damages for being taken from work or home, fingerprinted, held in jail and subjected to the ignominy of having been arrested for murdering a baby.

Appeal from Wayne; Murphy (George B.), J. Submitted October 6, 1953. (Docket Nos. 6, 7, 8, Calendar Nos. 45,879, 45,880, 45,881.) Decided November 27, 1953.

Separate actions by Naomi Howard, Gola Mae Simpson and John C. Thomas against William Burton for false arrest. Cases consolidated. Verdict and judgment for plaintiffs, remittiturs filed. Defendant appeals. Affirmed.

*Frank Schwartz* (*Arthur M. Lang,* of counsel), for plaintiffs.

*M. D. Smilay,* for defendant.

BUTZEL, J. Gola Mae Simpson, Naomi Howard and John C. Thomas, plaintiffs, each brought a separate action against William Burton, defendant, for false arrest and imprisonment alleging that defendant directed and urged officers of the Detroit police department in the arrest of plaintiffs on the charge of poisoning a 6-months-old baby. The cases were consolidated for trial and at a former trial plaintiffs recovered judgments against defendant. We reversed on appeal and ordered a new trial. *Simpson v. Burton,* 328 Mich 557. The present appeal is from the judgments entered on the verdicts and the denial of motions for new trial after the second trial wherein the jury again awarded each of the plaintiffs damages, this time in the sum of $5,000 each. These amounts were subsequently reduced to $2,500 each as to plaintiffs Simpson and Howard and $3,000 as to plaintiff Thomas on order of the trial judge and remittiturs filed by plaintiffs.

Although the record in the present case differs somewhat from that in the prior appeal, the essential facts of this case are as set forth in 328 Mich 557, and we, therefore, shall not review them in detail.

We shall but briefly summarize the testimony in the instant case.

Lora Lee Thomas, who subsequently married the defendant, was the unwed mother of a baby boy 6 months old. Miss Thomas had lived in Detroit 10 months and was employed by defendant as a bookkeeper. She came to Detroit from Georgia where defendant met her. She and her baby lived in defendant's apartment building where he also resided. On November 18, 1946, shortly after 3 p.m., the baby became very ill. Plaintiff Thomas, who is a brother of Lora Lee, and plaintiff Simpson both had been in the apartment that day and had seen the baby but they had departed prior to 3 p.m. when the baby became very ill. Plaintiff Howard was present in the apartment at the time it was determined that the baby was sick. A doctor was called and he directed that the baby be taken to the hospital immediately.

A police report, which was excluded at the first trial but was admitted at the second trial, disclosed that Miss Thomas informed a police officer that at some previous time the baby had refused to take medicine; that the medicine had a peculiar odor and a doctor who analyzed the medicine told her it contained poison; that Miss Thomas at that time suspected her brother of trying to poison the baby; that her brother and Miss Howard were with the baby the afternoon of November 18, 1946, and her brother had given the baby some milk just before it became sick.

This report was admitted without objection for the purpose of showing the information which the officers received prior to the arrest of the plaintiffs. There is no competent testimony in this case tending to prove the existence of an earlier poisoned medicine or that the plaintiffs, or any of them, were responsible for the allegedly poisoned medicine on this

previous occasion. See *Simpson* v. *Burton*, 328 Mich 557, 563.

It is claimed that plaintiff Thomas resented the fact that his sister was an unwed mother and that he had urged her to get rid of the baby. Plaintiff Simpson had hoped to adopt the child, but after its birth the mother stated she was not going to give it away. Testimony indicates that plaintiffs Thomas and Howard were good friends. Lora Lee, then 18 years of age, and Burton 57, also were very good friends and married later.

The baby died of bronchial pneumonia the morning following its admission to the hospital. On analysis the baby's stomach content was found to be free of poison.

There is a sharp conflict in the testimony in the case in regard to the acts of defendant leading to the arrest of plaintiffs by the police officers. Defendant claims that his first contact with the police occurred at the police station while attempting to locate Miss Thomas; that the police had a report to pick up the plaintiffs. He testified that he merely informed the police of his suspicions that a crime had been committed and that the plaintiffs were involved; and that he accompanied the officers to assist in identifying the persons whom the officers were going to arrest.

It is the claim of plaintiffs that defendant, about 5 or 6 p.m. on November 18, 1946, hailed a police scout car on the street and told police officer Fred Truax that the plaintiffs had poisoned or participated in the poisoning of a baby; that defendant accompanied the officers to the police station and from there he went with the police officers to apprehend the plaintiffs; that defendant actively participated in the arrest of each plaintiff by insisting that the officers arrest them and that he directed their arrest. The police officer so testified.

Plaintiff Thomas testified that he was arrested at 8 that evening at his place of employment; that defendant Burton was with the officers and pointed him out; that defendant stated, "I want him arrested. He poisoned that baby;" that while he was in custody defendant asked him what he had given the baby and when he denied having given it anything, defendant told him he would have to disclose what he gave the baby before he would be released.

Plaintiff Simpson testified that she was arrested about 11:30 p.m. on November 18, 1946, in her home after she had retired for the night. She further claimed that defendant Burton accused her and plaintiff Thomas of poisoning the baby; that he told the officers to arrest her and that he would send them up if it cost $5,000.

Plaintiff Howard testified that she was arrested at a cleaning establishment where she had gone to inquire about plaintiff Thomas' arrest; that Burton said, "She is the one.   *   *   *   Arrest her;" that Burton insisted upon the police arresting her and that after questioning at the police station, Burton reiterated his demand that they all be arrested; that Burton stated at the time of the arrest that he wanted them all arrested for poisoning the baby.

Plaintiffs Simpson and Howard were held in the police station until 4:30 p.m. on November 19, 1946. They were confined for a period of 16 hours and 45 minutes each. Plaintiff Thomas was released about 5 p.m. on November 20, 1946. His confinement was for a period of 44 hours and 45 minutes. The parties were released from police custody because there was no evidence of the baby having been poisoned.

There was sufficient testimony to justify the jury in finding that the defendant did more than merely report what he believed to be the commission of a crime. Without any knowledge whatsoever that a crime had been committed and acting solely upon

his own suspicions and initiative, defendant proceeded not only to give information which proved to be absolutely false, but he also actively participated in the subsequent arrests.

In *Maliniemi* v. *Gronlund,* 92 Mich 222 (31 Am St Rep 576), a private citizen was held liable for false arrest even though his defense asserted that the police officer present had actually made the arrest. This Court stated at p 227:

"If it had not been for defendant, plaintiff would never have been arrested or imprisoned. The whole period of plaintiff's imprisonment was the natural result of defendant's acts. According to plaintiff's statement, defendant did more than simply to communicate facts and circumstances of suspicion to the officer, leaving such officer to act on his own judgment. The officer, who is not sworn in the case, evidently acted upon the judgment of Gronlund, and it may well be said that defendant directed the arrest."

In *McDermott* v. *W. T. Grant Co.,* 313 Mass 736 (49 NE2d 115), the request of defendant's manager to an officer whom he saw on the street that, "I want that man locked up. He's one of 3 men who have been in my store and stolen things," was held sufficient evidence of participation by the manager in the resulting arrest without a warrant to support a verdict against the manager's employer.

Numerous errors are claimed by defendant-appellant. It is claimed that counsel for plaintiffs in his opening statement went far beyond the allegations in the declaration. The declaration was the same as in the first case reported in 328 Mich 557. Substantially no objection was made in the first trial to the evidence which charged that defendant directed and urged the arrest of the plaintiffs. When in the opening statement in the present case counsel for plaintiffs placed special stress upon this point, defendant's attorney objected stating that it was not cov-

ered by the declaration. The parties had expressed themselves satisfied with the pleadings at the pretrial hearing and no amendment was asked for by plaintiffs' counsel. In order to avoid any question in the trial of the instant case, plaintiffs' counsel asked to amend the declaration so as to make it more full and complete and avoid any possible objection. Counsel inadvertently asked that the amendment be made so that the declaration would conform with the proofs rather than with his opening statement to which objection had been made. The court stated that he had some doubts whether the declaration was not sufficient to overcome the objection but in order to avoid any question he would permit the amendment. This was entirely in his discretion and there was no error.

"As a rule, the permission to amend rests wholly within the discretion of the trial court, and unless this discretion is abused, we will not interfere. This is true irrespective of whether the court refuses or permits the amendment." *Grant* v. *National Manufacturer & Plating Co.,* 258 Mich 453.

See, also, *Simonelli* v. *Cassidy,* 336 Mich 635; *Jackson City Bank & Trust Company* v. *Blair,* 333 Mich 399.

Error is here claimed, as in the prior appeal, that the trial judge took too active a part in examining the witnesses. While the judge did ask too many questions and did make some remarks which were pointless, we do not believe that his acts were sufficient to constitute prejudicial and reversible error. A trial judge should permit counsel to try the case and not repeatedly interfere by questioning the witness.

Appellant contends that the trial judge was in error in failing to file an opinion in denying the motions for a new trial as required by Court Rule No

47, § 3 (1945). The trial judge ordered a new trial unless remittiturs were filed by the plaintiffs. Such remittiturs were subsequently filed. An opinion in denying the motion for a new trial is desirable and the proper practice but the rule calling for such an opinion is directory and not mandatory. We do not reverse on that ground alone. *In re Kenealy's Estate,* 336 Mich 657.

It is further claimed that the judgment in each case is still excessive. We have no criterion for measuring damages in cases of this nature. Plaintiffs, besides being taken from their work or homes, were fingerprinted and held in jail. They claim they were and still are subjected to the ignominy of having been arrested for murdering a baby. The law does not provide any exact standard or yardstick for measuring damages of this type. There is no testimony in the record as to the evaluation of such damages in dollars. We decline to order a further remittitur.

Judgment is affirmed, with costs to plaintiffs.

DETHMERS, C. J., and ADAMS, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred with BUTZEL, J.

SHARPE, J., concurred in the result.