PRICE v HIGH POINTE OIL COMPANY, INC

Docket No. 298460. Submitted July 12, 2011, at Lansing. Decided
August 25, 2011, at 9:15 a.m. Leave to appeal granted, 491 Mich 870.

Beckie Price brought an action in the Clinton Circuit Court against
High Pointe Oil Company, Inc., claiming, among other things,
noneconomic damages for the mental anguish, emotional distress,
and psychological injuries sustained when High Pointe negligently
pumped 400 gallons of fuel oil into the basement of her house. The
incident created an environmental hazard that required Price's
home to be razed. Before the jury trial, High Pointe moved for
summary disposition, in part on the issue of noneconomic dam-
ages, arguing that noneconomic damages resulting from real
property damage were not compensable. The court, Randy L.
Tahvonen, J., denied that part of High Pointe's motion, concluding
that such damages could be recovered in a negligence action. The
jury awarded Price $100,000 for noneconomic damages, after
which High Pointe filed a motion for judgment notwithstanding
the verdict (JNOV) and remittitur. The court denied the motion,
and High Pointe appealed.

The Court of Appeals *held*:

1. As a general rule, noneconomic damages are recoverable in
tort claims, and emotional damages include both emotional dis-
tress and mental anguish. A tortfeasor is liable for all injuries
resulting directly from the wrongful act, whether foreseeable or
not, provided the damages are the legal and natural consequences
of the wrongful act. Because personal property is replaceable
chattel, damages for emotional distress and mental anguish for
injuries to personal property are not recoverable in a tort action.
Real property, however, has a unique and peculiar value, and
mental anguish damages naturally flowing from the damage to or
destruction of real property may be recovered in a negligence
action. Moreover, the plaintiff need not suffer the emotional
distress as a result of a fear of physical impact. Unlike a claim for
emotional distress, a party need not demonstrate a physically
manifested injury to recover for mental anguish.

2. The trial court properly denied High Pointe's motion for
summary disposition on the issue of noneconomic damages. Men-

tal anguish includes shame, mortification, mental pain and anxiety, discomfiture, and humiliation. Because Price presented evidence that she cried and became upset when talking about the destruction of her home, that her decision-making was affected at home and work, that she had difficulty sleeping and focusing her thoughts, and that she was prescribed and took an antidepressant for four months, a genuine issue of material fact existed regarding her claim for noneconomic damages.

3. The trial court also properly denied defendant's motion for JNOV. The jury verdict must stand if reasonable jurors could have reasonably reached different conclusions regarding the evidence. Price's testimony that she felt a great sense of personal loss following the destruction of her home; that she was embarrassed to move into her parents' home as an adult; that she suffered from anxiety, sleeplessness, and an inability to concentrate because of the stress; and that she took an antidepressant for four months was sufficient to submit the issue of noneconomic damages to the jury.

4. If the only error in the trial was the inadequacy or excessiveness of the verdict, under MCR 2.611(E)(1) the trial court may deny a motion for new trial on the condition that the nonmoving party consent to the entry of a judgment in the amount that the court finds to be the lowest (if the verdict was inadequate) or the highest (if the verdict was excessive) amount the evidence will support. The court must view the evidence in the light most favorable to the nonmoving party when deciding whether the jury award is supported by the evidence. The court must consider objective criteria relating to the actual conduct of the trial or the evidence presented, including whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact; whether it was within the limits of what reasonable minds would deem to be just compensation for the injury inflicted; and whether the amount actually awarded is comparable to other awards in similar cases. The court's decision is given deference because it is in the best position to evaluate the credibility of the witnesses and is in the best position to make an informed decision on the issue of remittitur. High Pointe failed to support its claim that the jury was influenced by sympathy following Price's testimony regarding how she suffered mentally and emotionally from the loss of her home. Given the evidence Price presented, the court did not abuse its discretion by denying High Pointe's motion for remittitur. The jury's $100,000 award for noneconomic damages was within the limits of what reasonable minds would deem to be just compensation for Price's mental anguish.

Affirmed.

1. DAMAGES — NONECONOMIC DAMAGES — NEGLIGENCE — REAL PROPERTY — MENTAL ANGUISH.

As a general rule, noneconomic damages are recoverable in tort claims, and emotional damages include both emotional distress and mental anguish; a tortfeasor is liable for all injuries resulting directly from the wrongful act, whether foreseeable or not, provided the damages are the legal and natural consequences of the wrongful act; real property has a unique and peculiar value, and mental anguish damages naturally flowing from the damage to or destruction of real property may be recovered in a negligence action; the plaintiff need not suffer the emotional distress as a result of a fear of physical impact; unlike a claim for emotional distress, a party need not demonstrate a physically manifested injury to recover for mental anguish; mental anguish includes shame, mortification, mental pain and anxiety, discomfiture, and humiliation.

2. JUDGMENTS — EXCESSIVE JUDGMENTS — REMITTITUR — OBJECTIVE CRITERIA.

If the only error in the trial was the inadequacy or excessiveness of the verdict, the trial court may deny a motion for new trial on the condition that the nonmoving party consent to the entry of a judgment in the amount that the court finds to be the lowest (if the verdict was inadequate) or the highest (if the verdict was excessive) amount the evidence will support; a trial court must view the evidence in the light most favorable to the nonmoving party when deciding whether the jury award is supported by the evidence; the court must consider objective criteria relating to the actual conduct of the trial or the evidence presented, including (1) whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact, (2) whether it was within the limits of what reasonable minds would deem to be just compensation for the injury inflicted, and (3) whether the amount actually awarded is comparable to other awards in similar cases; the court's decision is given deference because the court is in the best position to evaluate the credibility of the witnesses and is in the best position to make an informed decision on the issue of remittitur (MCR 2.611[E][1]).

*Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *James F. Graves* and *Stephen H. Sinas*), for plaintiff.

*Garan Lucow Miller, P.C.* (by *Megan K. Cavanagh*), for defendant.

Before:  BECKERING,  P.J.,  and  FORT  HOOD  and
STEPHENS, JJ.

BECKERING, P.J. In this negligence action, defendant,
High Pointe Oil Company, Inc., appeals as of right
following a jury trial in which plaintiff, Beckie Price,
was awarded $100,000 in noneconomic damages after
defendant filled the basement of her home with nearly
400 gallons of fuel oil. The incident created an environ-
mental hazard that required plaintiff's home to be
razed from the site and left her displaced from a
permanent home for almost two years. Defendant ap-
peals the trial court's orders denying its motion for
summary disposition on the issue of noneconomic dam-
ages and it's motion for judgment notwithstanding the
verdict (JNOV) and remittitur. We affirm.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff owned a home located in DeWitt, Michigan.
She and her former husband helped to build the house,
which was completed in 1975. The house was heated by
an oil furnace, and the oil tank was kept in the
basement. Beginning in 1995, the tank was serviced by
Mooney Oil, which was later purchased by defendant.
Plaintiff was on defendant's "keep full" list. In 2006,
plaintiff replaced her oil furnace with a propane fur-
nace. She then sold the oil furnace and oil tank to a
neighbor, who removed both from plaintiff's basement.
Before switching to the propane furnace, plaintiff tele-
phoned defendant and canceled its services. There were
no fuel oil deliveries made to plaintiff's house between
October 2006 and November 2007.

On November 17, 2007, while plaintiff was at work,
defendant attempted to deliver fuel oil to her house
because her name was inadvertently placed on defen-

dant's "keep full" list. Although the oil furnace and oil tank had been removed from plaintiff's basement, the fill pipe located outside of the house had remained unchanged. Defendant's oil truck driver took the hose from his truck, hooked the hose up to the fill pipe, and pumped fuel oil into plaintiff's basement. After four or five minutes, the driver stopped pumping because he felt it had gone too long and that there might be a problem. The driver then looked into the basement and saw fuel oil on the floor. He called 911, and emergency crews responded shortly thereafter. In total, the driver pumped 396 gallons of fuel oil into plaintiff's basement.

An environmental consulting company assessed the damage. Many of plaintiff's personal items located on the main floor of the home were able to be salvaged; however, most of the items in the basement were too heavily contaminated to be salvaged. Additionally, more porous items, such as mattresses and pillows, could not be salvaged because they had absorbed oil fumes. The items that could be salvaged were placed in storage, and the rest were put in a pole barn on plaintiff's property. Eventually, it was determined that the oil had leaked into the soil and that as a result of the contamination, the entire house had to be demolished. The Department of Environmental Quality notified plaintiff on April 18, 2008, that the excavation and cleanup of the soil had been completed and that no further action was required.

From November 17, 2007, to March 1, 2008, plaintiff stayed in the extra bedroom of her parents' house, which was also being used to store a number of large antiques, although she often slept on the couch. Her parents were in Texas for all but one week of the time she lived there. From March 1, 2008, until late September 2009, plaintiff stayed in a duplex. Thereafter, she moved into a new house that she had helped to build.

Plaintiff built the new house on the same property as the old one, but the new house had to be built in a different location on the property because the soil was unstable where the site had been excavated.

Plaintiff filed suit in August 2008, alleging counts of negligence, gross negligence, negligent infliction of emotional distress, nuisance, trespass, and a private citizen's claim under the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.* She requested general and compensatory damages for the economic harm caused by defendant's conduct, as well as noneconomic damages for annoyance, inconvenience, pain, suffering, mental anguish, emotional distress, and psychological injuries caused by the destruction of her house.

Plaintiff moved for partial summary disposition under MCR 2.116(C)(9) and (10), requesting that the trial court grant summary disposition on her claims of negligence, negligent infliction of emotional distress, trespass, and nuisance. Plaintiff also argued that under the court rules she was entitled to seek noneconomic damages for emotional distress and mental anguish and exemplary damages. Defendant filed a countermotion for summary disposition under MCR 2.116(C)(8) and (10). In regard to plaintiff's request for noneconomic damages, defendant argued that noneconomic damages resulting from property damage are not compensable.

The trial court granted plaintiff summary disposition on her negligence claim and granted defendant summary disposition on plaintiff's claims of gross negligence and negligent infliction of emotional distress. The court denied both parties' motions for summary disposition on the trespass, nuisance, and private citizen's claims. With regard to noneconomic damages, the court stated:

> [*The Court*]: Relating to the damages, in essence, by dismissing the claim of negligent infliction of emotional

distress, I have deprived the Plaintiff of the opportunity to seek mental anguish damages secondary to property damage, and I think that's the law . . . .

So, it seems to me that the request for economic losses adequate to put the Plaintiff in the position she would have occupied had the torts not been committed, is, of course, for the jury, and I'm satisfied that she can seek to recover non-economic damages as typically allowed in connection with the claim for negligence.

\* \* \*

[*Defense Counsel*]: Just for clarification for me, you are allowing mental anguish damages for the negligence claim resulting to the property damage?

*The Court*: Yes, and that's why I took out, in part, the claim for negligent infliction of emotional distress, because the idea of inflicting emotional distress is that the foreseeable outcome of the actor's conduct would be to cause emotional distress, and I don't think that a negligent defendant has to foreseeably see that as an outcome of their conduct if, in fact, it results naturally and probably from that conduct.

The parties agree that during the time plaintiff was displaced from her home, all of her economic losses, including the costs of demolition, excavation, and remediation expenses, were paid by her insurer, defendant, or defendant's insurer. Plaintiff received $175,000 from her insurance company, which represented the fair market value of her house, approximately $10,000 for lost personal property, and $1,000 a month for rent while she lived in the duplex. Plaintiff testified at her deposition that she had not incurred any out-of-pocket costs associated with the incident.

In January 2010, the case proceeded to a jury trial on plaintiff's trespass, nuisance, and private citizen's claims, as well as the issue of damages related to her

negligence claim. Before presenting any proofs, plaintiff withdrew her claim for economic damages, as well as her trespass and nuisance claims. She requested that the court handle her private citizen's claim posttrial.[1] Over defendant's objection, the court ruled that plaintiff was entitled to seek noneconomic damages for mental anguish, fright, shock, denial of social pleasures or enjoyments, and any embarrassment she suffered as a result of defendant's negligence.

Plaintiff testified that she felt a great sense of loss over the destruction of her house, which held special memories for her; she was embarrassed to move into her parents' house as an adult; she suffered from sleeplessness and an inability to concentrate because of the stress of the situation; and she took an antidepressant over the course of several months. At the close of proofs, the court instructed the jury, over defendant's objection, that it could award plaintiff "non-economic damages, for things such as mental anguish and fright and shock, and denial of social pleasures and enjoyment in the use of the former home and embarrassment or humiliation" suffered as a result of the property damage negligently caused by defendant. The jury returned a verdict in favor of plaintiff in the amount of $100,000 for past damages and zero dollars for future damages. The court entered a judgment in plaintiff's favor. Thereafter, defendant filed a motion for a new trial, JNOV, and remittitur, arguing that plaintiff had failed to present sufficient proofs to support the verdict. The court denied the motion.

Defendant now appeals as of right the trial court's orders regarding plaintiff's recovery of noneconomic damages.

---

[1] At trial, defendant moved for a directed verdict on plaintiff's private citizen's claim. The trial court took the matter under advisement and later granted defendant's motion.

II. STANDARDS OF REVIEW

Whether a plaintiff is entitled to seek noneconomic damages for damage to or destruction of real property presents a question of law, which we review de novo. See *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010).

Plaintiff moved for partial summary disposition under MCR 2.116(C)(9) and (10), and defendant moved for summary disposition under MCR 2.116(C)(8) and (10). The trial court did not specify which subrules it relied on in deciding the parties' motions.

> A grant or denial of summary disposition is reviewed de novo to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. [*Id.*] at 119. The motion should be granted only when the claim is so legally deficient that recovery would be impossible even if all well-pleaded factual allegations were true and viewed in the light most favorable to the nonmoving party. *Id.* Likewise, a motion under MCR 2.116(C)(9) tests the legal sufficiency of a defense by the pleadings alone. *Slater v Ann Arbor Pub Schools Bd of Ed*, 250 Mich App 419, 425; 648 NW2d 205 (2002). All well-pleaded factual allegations are accepted as true, and summary disposition is appropriate only "when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Id.* at 425-426. A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Maiden*, [461 Mich] at 119-120. All admissible evidence submitted by the parties is reviewed in the light most favorable to the nonmoving party and summary disposition is appropriate only when the evidence fails to establish a genuine issue regarding any material fact. *Id.*; MCR 2.116(G)(6). [*USA Cash #1, Inc v City of Saginaw*, 285 Mich App 262, 265-266; 776 NW2d 346 (2009).]

A trial court's decision on a motion for JNOV is also reviewed de novo. *Prime Financial Servs LLC v Vinton*, 279 Mich App 245, 255; 761 NW2d 694 (2008). We view the evidence and all legitimate inferences from it in the light most favorable to the nonmoving party to determine whether a question of fact existed. *Livonia Bldg Materials Co v Harrison Constr Co*, 276 Mich App 514, 517-518; 742 NW2d 140 (2007). If reasonable jurors could have honestly reached different conclusions regarding the evidence, the jury verdict must stand. *Genna v Jackson*, 286 Mich App 413, 417; 781 NW2d 124 (2009).

We review for an abuse of discretion a trial court's decision regarding remittitur. *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 462; 750 NW2d 615 (2008). An abuse of discretion occurs when the result is outside the range of principled outcomes. *Heaton v Benton Constr Co*, 286 Mich App 528, 538; 780 NW2d 618 (2009). The trial court, having witnessed the testimony and the evidence as well as the jury's reactions, is in the best position to evaluate the credibility of the witnesses and make an informed decision. *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 629-630; 769 NW2d 911 (2009). Therefore, we must give due deference to the trial court's decision. *Id.*

### III. NONECONOMIC DAMAGES FOR THE DESTRUCTION OF REAL PROPERTY

Defendant argues on appeal that under current Michigan law, plaintiff is not entitled to seek noneconomic damages for mental anguish caused by the destruction of her home. Defendant first raised this argument in response to plaintiff's motion for summary disposition, and the argument presents an issue of first impression in this state. We agree with the trial court

that it was legally permissible for plaintiff to seek mental anguish damages in this case.

As a general rule, noneconomic damages are recoverable in tort claims, and emotional damages include both emotional distress and mental anguish. See *Phillips v Butterball Farms Co, Inc (After Second Remand)*, 448 Mich 239, 251 n 32; 531 NW2d 144 (1995); *McClain v Univ of Mich Bd of Regents*, 256 Mich App 492, 498-500; 665 NW2d 484 (2003). In *Sutter v Biggs*, 377 Mich 80, 86; 139 NW2d 684 (1966), our Supreme Court explained:

> The general rule, expressed in terms of damages, and long followed in this State, is that in a tort action, the tort-feasor is liable for all injuries resulting directly from his wrongful act, whether foreseeable or not, provided the damages are the legal and natural consequences of the wrongful act, and are such as, according to common experience and the usual course of events, might reasonably have been anticipated.

According to defendant, plaintiff is limited in her recovery to the difference between the market value of her house before and after the damage. Because plaintiff was paid the difference in market value, defendant argues that she has been fully compensated. Defendant relies on *Strzelecki v Blaser's Lakeside Indus of Rice Lake, Inc*, 133 Mich App 191; 348 NW2d 311 (1984), and *Baranowski v Strating*, 72 Mich App 548; 250 NW2d 744 (1976), to support its argument. In *Strzelecki*, this Court stated:

> "It is the settled law of this state that the measure of damages to real property, if permanently irreparable, is the difference between its market value before and after the damage. However, if the injury is reparable, and the expense of repairs is less than the market value, the measure of damage is the cost of the repairs." [*Strzelecki*, 133 Mich App at 194 (citation omitted).]

In both *Strzelecki* and *Baranowski*, however, this Court addressed the measure of damages for *economic* loss suffered as a result of the destruction of real property. Neither case included a discussion of noneconomic damages. Therefore, defendant's reliance on *Strzelecki* and *Baranowski* is misplaced.

Defendant further argues that recovery for emotional distress or mental anguish caused by damage to or the destruction of real property is not permitted under common law. In support of its argument, defendant cites *Koester v VCA Animal Hosp*, 244 Mich App 173; 624 NW2d 209 (2000), and *Bernhardt v Ingham Regional Med Ctr*, 249 Mich App 274; 641 NW2d 868 (2002). In *Koester*, a negligence action, this Court considered whether a dog owner could recover "damages of emotional distress and loss of companionship" of his pet dog, which is considered personal property under Michigan jurisprudence. *Koester*, 244 Mich App at 176. Declining to permit such recovery, the Court stated:

> There is no Michigan precedent that permits the recovery of damages for emotional injuries allegedly suffered as a consequence of property damage. Plaintiff requests that we allow such recovery when a pet is the property that is damaged, arguing that pets have evolved in our modern society to a status that is not consistent with their characterization as "chattel." In essence, plaintiff requests that we create for pet owners an independent cause of action for loss of companionship when a pet is negligently injured by a veterinarian. Although this Court is sympathetic to plaintiff's position, we defer to the Legislature to create such a remedy. [*Id.*]

In *Bernhardt*, the plaintiff's claims arose out of the loss of two pieces of jewelry that were of great sentimental value to her. *Bernhardt*, 249 Mich App at 276-277. The plaintiff filed suit against the defendant hospital, which

she alleged was responsible for the loss, claiming conversion, breach of bailment, and intentional infliction of emotional distress and, in the alternative, negligence and replevin. *Id.* at 277. This Court held that the plaintiff's "claims of emotional distress in connection with her tort claims of conversion and negligence" were insufficient to bring the "case within the jurisdiction of the circuit court," noting that the plaintiff had not specifically alleged emotional distress damages in connection with her conversion and negligence claims, as well as the *Koester* Court's statement that "there is no Michigan precedent that permits the recovery of damages for emotional injuries allegedly suffered as a consequence of property damage." *Id.* at 279 & n 1.

Defendant acknowledges that both *Koester* and *Bernhardt* involved the loss or destruction of personal property, whereas, this case involves the destruction of real property. Nonetheless, defendant asserts that those holdings should be applied in this case. We disagree. As indicated, the general rule in Michigan is that noneconomic damages are recoverable in tort claims, *Phillips*, 448 Mich at 251 n 32, and "in a tort action, the tort-feasor is liable for *all* injuries resulting directly from [the] wrongful act, whether foreseeable or not, provided the damages are the legal and natural consequences of the wrongful act, and ... might reasonably have been anticipated," *Sutter*, 377 Mich at 86. While this Court has carved out an exception to that general rule in regard to emotional damages for the loss or destruction of personal property (which is considered to be a replaceable chattel despite any emotional attachment)[2], we decline to extend

---

[2] *Random House Webster's College Dictionary* (2001) defines "chattel" as "a movable article of personal property" and "any tangible property other than land and buildings." *Merriam-Webster's Collegiate Dictionary*

that exception to real property. Defendant has failed to cite any authority requiring such a holding.

Furthermore, contrary to defendant's assertion, the law has historically distinguished between personal property and real property. For example, liability for trespass to land does not require any actual showing of damage. " 'Any intentional and unprivileged entry on land is a trespass without a showing of damage, since those who own land have an exclusive right to its use[.]' " *Adkins v Thomas Solvent Co*, 440 Mich 293, 304; 487 NW2d 715 (1992), quoting Prosser & Keeton, Torts (5th ed), § 87, p 623. Liability for a trespass to chattel, however, generally requires some showing of damage. Section 218 of the Restatement Second of Torts provides:

> One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if,
>
> (a) he dispossesses the other of the chattel, or
>
> (b) the chattel is impaired as to its condition, quality, or value, or
>
> (c) the possessor is deprived of the use of the chattel for a substantial time, or
>
> (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest. [1 Restatement Torts, 2d, § 218, p 420.]

Comment (e) to that section clarifies the distinction between real and personal property in tort law:

> The interest of a possessor of a chattel in its inviolability, unlike the similar interest of a possessor of land, is not given legal protection by an action for nominal damages for

(11th ed) defines "chattel" as "an item of tangible movable or immovable property except real estate and things (as buildings) connected with real property[.]"

harmless intermeddlings with the chattel. In order that an actor who interferes with another's chattel may be liable, his conduct must affect some other and more important interest of the possessor. Therefore, one who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected as stated in Clause (c). Sufficient legal protection of the possessor's interest in the mere inviolability of his chattel is afforded by his privilege to use reasonable force to protect his possession against even harmless interference. [Id. at 421-422.]

Similarly, our Supreme Court has held that breach of contract for the sale of real property necessarily includes the right to specific performance because land is presumed to have "a unique and peculiar value . . . ." *In re Egbert R Smith Trust*, 480 Mich 19, 26; 745 NW2d 754 (2008); see also *Kent v Bell*, 374 Mich 646, 651; 132 NW2d 601 (1965) (ADAMS, J.). Moreover, in holding that the plaintiff in *Kent* could require specific performance of a contract involving the upkeep of a house in exchange for a later sale or devise of the house to the plaintiff, see *Kent*, 374 Mich at 648-649 (KELLY, J., dissenting), the Court specifically noted that, with respect to the home, "[t]here is also involved a house having a particular value to [the plaintiff]. Conceivably, it could not be duplicated by an award of money." *Id.* at 651 (ADAMS, J.).

Authors and poets alike wax philosophical about the unique value of a home, which often provides as much, if not more, in the way of feelings of emotion and memories as it does shelter. A home's unique and particular value has been acknowledged by our Supreme Court, and damage to or destruction of one's

home or land would, in most cases, produce emotional suffering. Additionally, such a loss causes the stress and upheaval of displacement and the need to seek alternative shelter, which does not result from the loss or destruction of personal property. Dealing with the consequences caused by the loss of or severe damage to one's home and relocating or rebuilding also often involves considerable time and energy in addition to stress. Put simply, there are numerous and substantial differences between real and personal property. As such, we decline to extend the noneconomic damages carveout that this Court has applied to personal property.

Defendant also argues that plaintiff's claim for noneconomic damages is barred because she did not suffer fear of physical harm and was not present when the fuel oil was pumped into her house. Defendant relies on our Supreme Court's holding in *Daley v LaCroix*, 384 Mich 4; 179 NW2d 390 (1970), to support this claim. In *Daley*, the defendant's reckless driving caused his car to strike a utility pole, cutting electric lines connected to the plaintiffs' home and causing an explosion that resulted in property damage. *Id.* at 6-7. The plaintiffs "claimed, in addition to property damage, that Estelle Daley suffered traumatic neurosis, emotional disturbance and nervous upset, and that Timothy Daley suffered emotional disturbance and nervousness as a result of the explosion and the attendant circumstances." *Id.* at 7. The Supreme Court allowed the plaintiffs to recover not only for their property damage, but also for any physical injury produced as a result of emotional distress proximately caused by the defendant's negligent conduct. *Id.* at 15-17. In so holding, the Court overruled the common-law "impact rule," which required that a plaintiff suffer

a physical impact in order to recover damages for negligently caused emotional distress. *Id.* at 11-12. The Court explained:

> We hold that where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock.

> \* \* \*

> Further, plaintiff has the burden of proof that the physical harm or illness is the *natural result* of the fright proximately caused by defendant's conduct. In other words, men of ordinary experience and judgment must be able to conclude, after sufficient testimony has been given to enable them to form an intelligent opinion, that the physical harm complained of is a natural consequence of the alleged emotional disturbance which in turn is proximately caused by defendant's conduct. [*Id.* at 12-14 (citations omitted).]

Contrary to defendant's argument, the *Daley* Court's holding does not require that a plaintiff suffer emotional distress as a result of fear of physical impact. Nor did the Court hold that a plaintiff must witness or contemporaneously experience the underlying wrong. Rather, all that is required under *Daley* is that a plaintiff's physical injury be a natural result of emotional distress proximately caused by the defendant's negligence.

Defendant argues that even if plaintiff could recover noneconomic damages stemming from the destruction of her real property, she would be required, under *Daley*, to show that her mental anguish manifested itself physically. Defendant's reasoning blurs the line

between damages for emotional distress and mental anguish. Although emotional distress and mental anguish are related, they are distinct and separate measures of damages. *McClain*, 256 Mich App at 498, 500. Emotional distress requires a manifestation of physical injury as a result of mental distress. *Id.* at 498; *Ledbetter v Brown City Savings Bank*, 141 Mich App 692, 703; 368 NW2d 257 (1985). "Mental anguish damages, however, are not so circumscribed. A plaintiff is not limited to recovery for physical pain and anguish, but, rather, is entitled to damages for mental pain and anxiety which naturally flow from the injury, i.e., for shame, mortification, and humiliation." *Ledbetter*, 141 Mich App at 703; see also *McClain*, 256 Mich App at 497-499 (discussing at length our Supreme Court's holding in *Daley* and the difference between recovery for emotional distress without accompanying physical injury or any other independent basis for tort liability and recovery for mental anguish and other damages flowing from an underlying injury). As stated by this Court in *McClain*,

> recovery for emotional distress differs from recovery for mental anguish, and various specific nonpecuniary, personal damages beyond the ambit of emotional distress are available to a plaintiff who can establish proof of such damages. Patek, McLain, Granzotto & Stockmeyer, 1 Michigan Law of Damages and Other Remedies (ICLE), § 2.15, p 2-15 and § 2.17, p 2-16. These include: physical pain and suffering; mental anguish; fright and shock; denial of social pleasure and enjoyment; embarrassment, humiliation, or mortification; or other appropriate damages. *Id.*; see also SJI2d 50.02 and comment. [*McClain*, 256 Mich App at 498-499.]

Therefore, to the extent that plaintiff sought recovery for mental anguish, she was not required to show that it manifested itself physically.

Noneconomic damages are generally recoverable in tort claims, and we are not convinced that noneconomic damages stemming from damage to or destruction of real property must or should be excepted from that general rule.[3] We conclude that in negligence actions, a plaintiff may recover mental anguish damages naturally flowing from the damage to or destruction of real property.[4]

### IV. PLAINTIFF'S EVIDENCE OF NONECONOMIC DAMAGES

Defendant next argues that even if it was permissible for plaintiff to seek mental anguish damages in this case, she failed to present sufficient evidence of her claim for damages; thus, the trial court erred by denying defendant's motions for summary disposition and JNOV.[5] We disagree.

Defendant asserts that it was entitled to summary disposition on the issue of noneconomic damages and JNOV because plaintiff "failed to sustain her burden of proving . . . that a definite and objective physical injury [was] produced as a result of emotional distress proximately caused by defendant's negligent conduct." As indicated, however, it is unnecessary to demonstrate a

---

[3] See, as persuasive authority, *Stevens v City of Flint*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2007 (Docket No. 272329), and *Bielat v South Macomb Disposal Auth*, unpublished opinion per curiam of the Court of Appeals, issued November 9, 2004 (Docket No. 249147).

[4] Defendant argues that it was entitled to summary disposition of plaintiff's claim for noneconomic damages under the alternative theories of trespass and nuisance. We need not address this argument, however, as plaintiff withdrew her trespass and nuisance claims before trial.

[5] Defendant cursorily stated in its brief on appeal that the trial court also erred by denying its motion for a new trial. Because defendant failed to present any legal analysis in support of its statement, we decline to address the issue.

physically manifested injury in order to recover mental anguish damages and various other "nonpecuniary, personal damages beyond the ambit of emotional distress," including "physical pain and suffering; . . . fright and shock; denial of social pleasure and enjoyment; embarrassment, humiliation, or mortification; or other appropriate damages." *McClain*, 256 Mich App at 498-499; see also *Ledbetter*, 141 Mich App at 703. In order for a plaintiff to recover mental anguish damages, those damages must "naturally flow from the injury," *Ledbetter*, 141 Mich App at 703, in this case, the destruction of plaintiff's real property. Mental anguish encompasses, among other things, "shame, mortification, mental pain and anxiety, annoyance, discomfiture, and humiliation." *McClain*, 256 Mich App at 503.

In its denial of defendant's motion for summary disposition on the issue of noneconomic damages, the trial court specifically stated that plaintiff was permitted to seek damages for mental anguish. The court also made the general statement that plaintiff could "seek to recover non-economic damages as typically allowed in connection with [a] claim for negligence." Our review of a trial court's decision on a motion for summary disposition is limited to the evidence that had been presented to the court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009). At the time of her motion, plaintiff presented the court with deposition testimony in which she testified that she was emotionally attached to her home and the land on which it was built; she had intended to live in the home indefinitely; and she sought treatment from her doctor after her basement was filled with fuel oil. Plaintiff initially visited her doctor because whenever she talked about the incident, she cried and became upset; her decision-making was affected both at home and at work;

she had difficulty sleeping; and she had trouble focusing. Plaintiff's doctor prescribed an antidepressant medication, which plaintiff took for approximately four months. At her deposition, plaintiff presented the records from her doctor's visit, which stated: "The patient is anxious, fearful, [and] in depressed moods . . . ." Considering this evidence, the trial court did not err by determining that a genuine issue of material fact existed in regard to plaintiff's claim for noneconomic damages. See *USA Cash #1*, 285 Mich App at 266 (stating that summary disposition under MCR 2.116(C)(10) is appropriate "only when the evidence fails to establish a genuine issue regarding any material fact"). Plaintiff presented evidence that as a result of the destruction of her home, she suffered mental anguish, specifically mental pain and anxiety, and discomfiture, i.e., disconcertion, frustration of hopes or plans. See *McClain*, 256 Mich App at 503; *Random House Webster's College Dictionary* (2005), p 352 (defining "discomfiture"). She also presented evidence of fright, shock, and denial of the enjoyment of her property. See *McClain*, 256 Mich App at 498-499.

Additionally, we find that the trial court did not err by denying defendant's motion for JNOV. Viewing the evidence presented at trial in the light most favorable to plaintiff, there was sufficient evidence of noneconomic damages to present the issue to the jury. See *Heaton v Benton Constr Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009) (stating that JNOV should be granted only when there is insufficient evidence to create an issue for the jury); *Livonia Bldg Materials*, 276 Mich App at 517-518 (stating that in reviewing a trial court's decision on a motion for JNOV, this Court must review the evidence in the light most favorable to the nonmoving party to determine whether a question of fact existed). Before the presentation of proofs at trial, the trial court

ruled that plaintiff was entitled to seek noneconomic damages for mental anguish, fright, shock, denial of social pleasures or enjoyments, and any embarrassment she suffered as a result of defendant's negligence. During direct examination of plaintiff, the following exchange occurred:

*Q.* Becky, when you witnessed this happening at the time, what were you feeling emotionally?

*A.* I think mostly it was the fact that it was gone, that there just wasn't any coming back at this point, you know, to your house. The home I brought my kids to is gone; all of the hard work was for naught, and I really just didn't know what I was going to do at that point.

*Q.* Were you still living at your parents' home?

*A.* Yes; yes, I was.

*Q.* Did it become necessary for you to seek the help of your doctor?

*A.* I did; I did, yes.

*Q.* Tell us about that, please.

*A.* Fairly shortly after it happened, I--obviously, you are very upset and everything, but it was--it was just hard to sleep. I was having trouble focusing on, you know, at work and at home, and I knew I needed to focus as much as I could, because I knew I was going to have decisions to make and I was just having a hard time with all of it.

*Q.* Who did you see?

*A.* I went to my doctor.

\* \* \*

*Q.* Okay. And when you met with her, did you share with her the troubles you were having?

*A.* I did, I did.

*Q.* And did she counsel you?

*A.* Well, she--yes, she did. She recommended--and she recommended a medication that might help me kind of--an anti-depressant to help maybe get through the rough times.

*Q.* She put you on Paxil, did she not?

*A.* She did.

*Q.* And did you have refills for that, as well?

*A.* I did, I did. There was I think two; there was two initially, and then when I went back with her, maybe two months later, I had a regular physical, and we talked about it again, and I was given a couple of more refills.

\* \* \*

*Q.* How did that work out?

*A.* Well, first of all, it's rather embarrassing to be 50-some years old and have to move back in with Mom and Dad.

My parents are collectors of certain antiques, and it's very crowded; it's very crowded. The extra bedroom had-- the extra bedroom I was using had like six china cabinets, a dresser, and I don't know, a couple of sewing machines in it and it was just--it was too close; it wasn't mine; it wasn't my home. I had been on my own for 30-some years. It just wasn't mine.

\* \* \*

*Q.* The new house, if you will, is it the same as the old home you had?

*A.* No.

*Q.* Why not?

*A.* I guess it just doesn't have the personality to it. It doesn't have your kids' memories to it. It doesn't have the appreciation of what you go through and do. So much of it seems to have a different type of a quality, characteristics, value to it. It's just more of a home when you do it all yourself. It just was home.

Plaintiff also presented the same medical records she had presented at her deposition, which indicated that she had been anxious, fearful, and sufferied depressed moods. At the close of proofs, the court instructed the jury, in accordance with SJI2d 50.02, that it could award plaintiff "non-economic damages, for things such as mental anguish and fright and shock, and denial of social pleasures and enjoyment in the use of the former home and embarrassment or humiliation." After the jury returned its verdict in favor of plaintiff, defendant moved for JNOV, which the court denied. The evidence plaintiff presented at trial—specifically her testimony that she felt a great sense of personal loss after the destruction of her home; that she was embarrassed about being forced to move into her parents' house as an adult; that she suffered from anxiety, sleeplessness, and inability to concentrate because of the stress of the situation; and that she took an antidepressant over the course of several months—was sufficient to submit the issue of noneconomic damages to the jury.

### V. DEFENDANT'S MOTION FOR REMITTITUR

Defendant finally argues that the trial court abused its discretion by denying its motion for remittitur. Again, we disagree.

Remittitur is provided for under MCR 2.611(E)(1), which states:

> If the court finds that the only error in the trial is the inadequacy or excessiveness of the verdict, it may deny a motion for new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the lowest (if the verdict was inadequate) or highest (if the verdict was excessive) amount the evidence will support.

In determining whether remittitur is appropriate, a trial court must view the evidence in the light most favorable to the nonmoving party and decide whether the jury award was supported by the evidence. *Taylor v Kent Radiology, PC*, 286 Mich App 490, 522; 780 NW2d 900 (2009). The trial court's determination must be based on objective criteria relating to the actual conduct of the trial or the evidence presented. *Palenkas v Beaumont Hosp*, 432 Mich 527, 532; 443 NW2d 354 (1989). Such objective criteria include (1) whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact, (2) whether it was within the limits of what reasonable minds would deem to be just compensation for the injury inflicted, and (3) whether the amount actually awarded is comparable to other awards in similar cases. *Diamond v Witherspoon*, 265 Mich App 673, 694; 696 NW2d 770 (2005). As noted, the trial court is in the best position to evaluate the credibility of the witnesses and make an informed decision on the issue of remittitur, having witnessed the testimony, evidence, and the jury's reactions. *Unibar Maintenance Serv*, 283 Mich App at 629-630. Therefore, we must give the trial court's decision deference. *Id.*

Defendant argues that the amount of noneconomic damages awarded plaintiff did not fall within the limits of what reasonable minds would deem just compensation for the mental anguish she suffered and, therefore, that the verdict must have been the product of sympathy. But defendant has not alleged that there was misconduct at trial, that the jury was improperly instructed, or that the jury allowed sympathy to sway its decision. The trial court instructed the jury that economic damages were not at issue and that in considering the issue of noneconomic damages, its decision must not be influenced by sympathy, bias, or prejudice. Juries

are presumed to understand and follow their instructions. *Dep't of Transp v Haggerty Corridor Partners Ltd Partnership*, 473 Mich 124, 178-179; 700 NW2d 380 (2005) (MARKMAN, J., dissenting). Further, the trial court was in the best position to observe the jury's reaction to plaintiff's testimony and the other evidence presented. See *Unibar Maintenance Serv*, 283 Mich App at 629-630.

Defendant attempts to minimize the emotional damage suffered by plaintiff, stating that the only evidence she presented in support of her claim for noneconomic damages was her own "testimony, without elaboration, that she was 'upset' and 'embarrassed' as a result of the destruction of her home and that her family doctor prescribed an antidepressant for 'possible' depression that had apparently resolved a month later." Contrary to defendant's assertion, however, plaintiff described in detail how she suffered emotionally and mentally after losing her home. She lost the home that she had helped to build, where she made memories with her children, and where she intended to continue living indefinitely. As a result of that loss and the stress of relocating, she suffered embarrassment while living in her parents' house, sleeplessness, and inability to focus, as well as fear, anxiety, and depressed moods, for which she took an antidepressant medication over the course of several months.

It is difficult to determine what amount of damages would justly compensate plaintiff for her suffering. In *Paulitch v Detroit Edison Co*, 208 Mich App 656, 657, 659; 528 NW2d 200 (1995), this Court affirmed a $359,000 jury verdict in an age-discrimination case. "Because evidence of emotional damage was presented at trial, and the award was comparable to awards in similar cases, the trial court properly deferred to the

jury and denied defendant's motions" for remittitur or a new trial. *Id.* at 659. The evidence of the "plaintiff's emotional damages, include[ed] his testimony that his relationships with his wife and friends suffered" as a result of the discrimination. *Id.* In *Howard v Canteen Corp*, 192 Mich App 427, 429, 435-436; 481 NW2d 718 (1991), overruled on other grounds by *Rafferty v Markovitz*, 461 Mich 265; 602 NW2d 367 (1999), this Court affirmed the trial court's denial of remittitur of a $200,000 award for mental anguish, emotional distress, and humiliation in a gender-based-discrimination case. In affirming the trial court, this Court explained:

> The testimony indicated that defendants' actions left plaintiff sad and depressed and that she is still dealing with her problems today. She is behind in paying her bills and suffers from a medical problem that she believes stems from her work situation. The evidence to support these results is found in the harassment and discrimination inflicted upon her for a lengthy period of time, despite her complaints to [a manager]. Under these circumstances, we do not believe the award was excessive, nor do we believe, giving deference to the trial court that personally observed the witnesses and heard the testimony, that the trial court abused its discretion in denying defendants' motion for remittitur. [*Id.* at 436 (citations omitted).]

Admittedly, both *Howard* and *Paulitch* involved discrimination actions and are not completely analogous to this case, which is a negligence action involving property damage. Defendant points to a Louisiana Supreme Court case, *Williams v City of Baton Rouge*, 731 So 2d 240, 252 (La, 1999), in which the court "reviewed cases awarding damages for mental anguish when property has been damaged" and found that the awards ranged "from $35,000 to $100." The highest amount of damages the court awarded to an individual plaintiff in that case was $35,000. *Id.* We note, however, that in *Will*

*iams,* none of the plaintiffs' homes had been damaged or destroyed as is the case here. See *id.* at 243, 251-252. Moreover, the disparity between $35,000 and $100 only demonstrates that determining a just amount of mental anguish damages is a fact-intensive analysis, which inevitably varies from case to case.

Although it may be difficult to determine what amount of noneconomic damages would justly compensate plaintiff, and an award of $100,000 may seem high in comparison to some other awards in cases involving property damage, "[t]he law does not provide any exact standard or yardstick for measuring damages of this type." *Howard v Burton,* 338 Mich 178, 186; 61 NW2d 77 (1953). Therefore, the "determination must necessarily be left to the good sense and sound judgment of the jury in their view of the evidence." *Sebring v Mawby,* 251 Mich 628, 629; 232 NW 194 (1930). Given the evidence presented by plaintiff and the lack of support for defendant's claim that the jury was improperly influenced by sympathy, we cannot conclude that the trial court abused its discretion by denying defendant's motion for remittitur. We give deference to the trial court's decision.

Affirmed.

FORT HOOD and STEPHENS, JJ., concurred with BECKERING, P.J.