**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
                       Marilyn Kelly
                       Stephen J. Markman
                       Diane M. Hathaway
                       Mary Beth Kelly
                       Brian K. Zahra

FILED JUNE 5, 2012

STATE OF MICHIGAN

SUPREME COURT

CANDICE JOHNSON and BABY
JOHNSON,

        Plaintiffs-Appellees,

v                             No. 142127

RAJAN PASTORIZA, M.D., and RAJAN
PASTORIZA, M.D., P.L.C., d/b/a
WOMEN'S FIRST HEALTH SERVICES,

        Defendants-Appellants.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

Candice Johnson suffered a lost pregnancy at 20 weeks' gestation, and on behalf of herself and the deceased fetus, Baby Johnson, sued Rajan Pastoriza, M.D., and his professional corporation, alleging negligence under MCL 600.2922a, which provides that a person who commits "a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus," and medical malpractice. Defendants

moved for summary disposition. The circuit court refused to grant summary disposition, but ordered plaintiffs to appoint a personal representative for the estate of Baby Johnson and to amend the complaint to bring the negligence claim that had been brought on behalf of Baby Johnson through the wrongful-death statute, MCL 600.2922. Defendants appealed by leave granted. The Court of Appeals held that MCL 600.2922, as amended by 2005 PA 270, effective December 19, 2005, to incorporate the language "or death as described in section 2922a," applied retroactively to plaintiffs' claim for wrongful death, which arose no later than November 1, 2005. The Court of Appeals further held that Pastoriza's refusal to perform a cerclage was a "wrongful or negligent act" under MCL 600.2922a.

We hold that the 2005 amendment of the wrongful-death statute, incorporating the language "or death as described in" MCL 600.2922a, does not apply to claims arising before the effective date of the amendment. The Legislature only intended the 2005 amendment to apply to claims arising on or after the effective date. Further, because defendants would be subjected to liability that did not exist at the time the cause of action arose, the amendment is not remedial and, therefore, cannot be deemed retroactive. Because the 2005 amendment of MCL 600.2922(1), incorporating "death as described in" MCL 600.2922a, is *not* retroactive, plaintiffs can only proceed under MCL 600.2922a.[1] In regard to plaintiffs' claim under MCL 600.2922a, we hold that MCL

---

[1] Given this disposition, we do not address "whether the reference to 'death as described in section 2922a' in the 2005 amendment of MCL 600.2922 incorporates the exceptions to recovery contained at MCL 600.2922a(2)." *Johnson v Pastoriza*, 489 Mich 856 (2011) (*Johnson II*).

600.2922a plainly requires an affirmative act and that an omission or refusal to act cannot constitute an affirmative act. We therefore reverse the judgment of the Court of Appeals and remand the case to the circuit court for entry of summary disposition in favor of defendants on the wrongful-death claim.[2]

## I. FACTUAL HISTORY

Candice had a history of miscarriages because of an incompetent cervix. Using a cerclage procedure between 13 and 16 weeks' gestation, however, Candice was able to have three consecutive full-term pregnancies. For her next pregnancy, she saw Pastoriza as her obstetrician. Pastoriza was aware of her success with the cerclage procedure and had removed her cerclage suture shortly before she last gave birth.

In September 2005, Candice experienced vaginal bleeding and went to Foote Hospital in Jackson. Emergency personnel recommended that she rest and meet with her treating obstetrician. A few days later, she saw Pastoriza, but he did not perform a cerclage. At that time an ultrasound showed a live, 12-week-old fetus. On October 12, 2005, another ultrasound showed a live fetus at almost 17 weeks' gestation. The ultrasound also showed that the length of Candice's cervix was roughly the same as when the previous cerclages had been performed. On October 19, 2005, Candice complained to Pastoriza that she felt preterm, labor-like cramping. She asked Pastoriza to perform a cerclage, but he did not do so. On November 1, 2005, Candice's cervix dilated and she went into premature labor. She was transferred to Sparrow Hospital in Lansing and

---

[2] This opinion does not affect plaintiff's separate medical malpractice claim.

3

received an emergency cerclage, but lost the 20-week-old fetus shortly after the transfer. The failed emergency cerclage also resulted in a significant and permanent cervical tear that might prevent Candice from having another child.

## II. LEGAL BACKGROUND

Following amendment by 1985 PA 93, subsection (1) of Michigan's wrongful-death statute, MCL 600.2922(1), provided that

> [w]henever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances that constitute a felony.

This version of MCL 600.2922 did not permit a plaintiff to bring a claim for the death of a nonviable fetus because a nonviable fetus was not viewed as a "person."[3]

In 1998, the Legislature created a new statute, MCL 600.2922a. Section 2922a, which became effective on January 1, 1999, is separate from the wrongful-death statute, and imposes liability for wrongful or negligent acts against a pregnant woman that result

---

[3] In *Thomas v Stubbs*, 455 Mich 853; 564 NW2d 463 (1997), this Court acknowledged that "[s]ince at least 1975 it has been held that a nonviable fetus is not a 'person' within the meaning of the wrongful death act." Cf. *Thomas v Stubbs*, 218 Mich App 46; 553 NW2d 634 (1996) (holding that a fetus "born alive," although not viable, is a "person" within the meaning of the wrongful-death statute). The parties have not asked us to reconsider *Thomas* and such reconsideration is unnecessary given that the Legislature has since amended MCL 600.2922 and adopted MCL 600.2922a, which specifically imposes liability under certain circumstances for wrongful or negligent acts against a pregnant woman that result in physical injury to or the death of a fetus.

4

in the pregnant woman's miscarriage or stillbirth or "physical injury" to the fetus. MCL 600.2922a, as added by 1998 PA 2011, provided:

> (1) A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual or physical injury to the embryo or fetus.

> (2) This section does not apply to any of the following:

> (a) An act committed by the pregnant individual.

> (b) A medical procedure performed by a physician or other licensed medical professional within the scope of his or her practice and with the pregnant individual's consent or the consent of an individual who may lawfully provide consent on her behalf or without consent as necessitated by a medical emergency.

> (c) The lawful dispensation, administration, or prescription of medication.

> (3) This section does not prohibit a civil action under any other applicable law.

> (4) As used in this section, "physician or other licensed medical professional" means a person licensed under article 15 of the public health code, 1978 PA 368, MCL 333.16101 to 333.18838.

In 2002, the Legislature amended MCL 600.2922a. The amendment extended civil liability to wrongful or negligent acts that caused the "death" of an embryo or fetus and changed the term "medical professional" to "health professional."[4] MCL 600.2922a, as amended by 2002 PA 164, currently provides:

> (1) A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage

---

[4] 2001 PA 1 similarly amended the Michigan Penal Code to provide felony penalties for intentional conduct or gross negligence that causes the death of an embryo or fetus.

5

or stillbirth by that individual, or physical injury to or the death of the embryo or fetus.

(2) This section does not apply to any of the following:

(a) An act committed by the pregnant individual.

(b) A medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and with the pregnant individual's consent or the consent of an individual who may lawfully provide consent on her behalf or without consent as necessitated by a medical emergency.

(c) The lawful dispensation, administration, or prescription of medication.

(3) This section does not prohibit a civil action under any other applicable law.

(4) As used in this section, "physician or other licensed health professional" means a person licensed under article 15 of the public health code, 1978 PA 368, MCL 333.16101 to 333.18838.

In 2003, the Court of Appeals addressed a medical malpractice action concerning a miscarriage in *McClain v Univ of Mich Bd of Regents*.[5] In *McClain*, the mother sought to recover damages for emotional distress resulting from the medical malpractice that had caused the miscarriage.[6] The defendant moved for summary disposition, claiming that the plaintiff was not entitled to recover damages arising from the loss of her deceased fetus.[7] The trial court granted summary disposition, holding that the plaintiff had failed to state a valid medical malpractice claim "with regard to delivery of a nonviable fetus."[8]

---

[5] *McClain v Univ of Mich Bd of Regents*, 256 Mich App 492; 665 NW2d 484 (2003).

[6] *Id*. at 493-495.

[7] *Id*. at 494.

[8] *Id*. at 495.

The Court of Appeals reversed.[9] It first noted that a wrongful-death action under MCL 600.2922 could not be brought on behalf of the fetus because the wrongful-death statute applied only to a "person" and the plaintiff's nonviable fetus was not a person.[10] The mother, therefore, could not recover for loss of society and companionship under MCL 600.2922.[11] Significantly, the *McClain* panel did not recognize or address the import of MCL 600.2922a.

The Legislature amended the wrongful-death statute in 2005 to specifically incorporate and cross-reference MCL 600.2922a. Because of the 2005 amendment, MCL 600.2922(1) currently reads as follows:

> Whenever the death of a person, injuries resulting in death, *or death as described in section 2922a* shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or death as described in section 2922a, and although the death was caused under circumstances that constitute a felony. [Emphasis added.]

Public Act 270 of 2005 was signed into law and given immediate effect as of December 19, 2005.

---

[9] *Id*. at 499-500.

[10] *Id*. at 495

[11] *Id*. at 495-496.

## III. PROCEDURAL HISTORY

Plaintiffs filed a complaint against defendants alleging negligence under MCL 600.2922a and medical malpractice. The complaint did not mention wrongful death or MCL 600.2922.

Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendants first argued that plaintiffs could not sustain a wrongful-death claim for a nonviable fetus under MCL 600.2922 because a nonviable fetus is not a person. Defendants also argued that plaintiffs had failed to state a claim under MCL 600.2922a because there was no allegation that defendants had committed an affirmative act.

In response, plaintiffs maintained that the refusal to perform a cerclage was an affirmative act. Plaintiffs further argued that MCL 600.2922, as amended by 2005 PA 270, was inapplicable because the amendment took effect after the instant case arose, stating, "It was not until December, 2005 that the legislature made clear that a cause of action for the death of a fetus under MCL 600.2922a now must be brought as a wrongful death action . . . ." Indeed, they indicated, "[f]or this reason, [p]laintiffs fashioned their complaint on behalf of the fetus under MCL 600.2922a, not under the wrongful death act." Plaintiffs did posit, however, that "if this Court disagrees, then plaintiff has only to either amend the complaint to add a Count III of wrongful death of the fetus, or bring a separate wrongful death action on behalf of the fetus under MCL 600.2922, and then consolidate."

Defendants then filed an additional motion for summary disposition. Defendants argued that the 2005 amendment of MCL 600.2922 was retroactive, and by incorporating references to MCL 600.2922a, MCL 600.2922, as amended by 2005 PA 270, requires

8

that a plaintiff establish, in a case in which "death as described in section 2922a" occurs, negligence through an affirmative act.

After a hearing, the circuit court denied defendants' motions, finding that plaintiffs could develop a cause of action under MCL 600.2922a through the wrongful-death statute or by pursuing a standard medical malpractice claim under *McClain*. The court reasoned that Pastoriza's refusal to perform the cerclage after Candice asked for it could be interpreted under MCL 600.2922a as an affirmative act and that the exception for medical providers did not apply. The court also permitted plaintiffs to amend the complaint.

Defendants applied for interlocutory leave to appeal.[12] On leave granted, the Court of Appeals affirmed the circuit court's decision in a published opinion.[13] Before addressing the substance of plaintiffs' claims, the Court considered whether MCL 600.2922, as amended by 2005 PA 270, applied retroactively. The Court concluded that the 2005 amendment was remedial and, thus, that the presumption that new statutes only have prospective application was inapplicable. The Court reasoned that the 2005 amendment "was enacted in order to clarify MCL 600.2922 and MCL 600.2922a and to resolve a controversy regarding their meaning."[14] Having concluded that the amended

---

[12] This interlocutory appeal does not involve Candice's standard malpractice action.

[13] Plaintiffs submitted their third amended complaint after the Court of Appeals issued its opinion in this case. The third amended complaint, filed in October 2010, reasserted Candice's claims of medical malpractice under *McClain*, her individual negligence claim under MCL 600.2922a, and added a new claim for wrongful death on behalf of the estate of Baby Johnson.

[14] *Johnson v Pastoriza*, 290 Mich App 260, 272; 810 NW2d 42 (2010) (*Johnson I*).

9

version of MCL 600.2922 applies retroactively, the Court then rejected defendants' position that MCL 600.2922a requires an affirmative act in order to establish a claim under the wrongful-death statute for death of a fetus. The Court stated:

> Pursuant to MCL 600.2922, a party need not establish that the injury was caused by an act. Rather, MCL 600.2922 specifically provides that liability is possible when the injury is "caused by wrongful act, neglect, or fault of another . . . ." While MCL 600.2922 refers to a "death as described in [MCL 600.2922a]," it does not indicate that the death in question must occur in the *manner* described in MCL 600.2922a. Plaintiffs are alleging that defendants caused their injuries when they neglected to perform the requested procedure in a timely manner. That allegation, when accepted as true, sufficiently established a cause of action pursuant to MCL 600.2922.[15]

The Court reasoned in the alternative that Pastoriza's refusal to perform the cerclage constituted an affirmative act.[16] The Court also concluded that the medical provider exception of MCL 600.2922a was inapplicable because no medical procedure had been performed.[17]

Defendants filed an application for leave to appeal in this Court. This Court granted leave to appeal in an order dated March 23, 2011, and directed the parties to brief "(1) whether the 2005 amendment of MCL 600.2922, 2005 PA 270, applies retroactively and (2) if so, whether the reference to 'death as described in section 2922a' in the 2005

---

[15] *Id*. at 272-273 (alteration in original).

[16] *Id*. at 273.

[17] *Id*. at 274.

10

amendment of MCL 600.2922 incorporates the exceptions to recovery contained at MCL 600.2922a(2)."[18]

## IV. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition.[19] Likewise, whether a statute applies retroactively is a question of statutory construction that this Court reviews de novo.[20] Questions of statutory interpretation are questions of law that are reviewed de novo.[21]

## V. ANALYSIS

### A. RETROACTIVITY OF MCL 600.2922(1) AS AMENDED BY 2005 PA 270

Public Act 270 of 2005 took effect on December 19, 2005, and plaintiffs' cause of action arose on November 1, 2005. Plaintiffs argue that the Court of Appeals was correct in holding that 2005 PA 270 is retroactive and applicable to this case. Plaintiffs argue that the Court of Appeals correctly held that MCL 600.2922 specifically provides that liability is possible when the "death as described in [MCL 600.2922a]" is "caused by wrongful act, neglect, or fault of another." Thus, plaintiffs need not establish under MCL 600.2922, as amended by 2005 PA 270, that the injury was caused by Pastoriza's affirmative act.

---

[18] *Johnson II*, 489 Mich at 856.

[19] *Haynes v Neshewat*, 477 Mich 29, 34; 729 NW2d 488 (2007).

[20] *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001).

[21] *Haynes*, 477 Mich at 34.

In determining whether a statute applies retroactively or prospectively, the intent of the Legislature governs.[22]  Statutes are presumed to apply prospectively unless the Legislature clearly manifests the intent for retroactive application.[23]  This is "especially true when giving a statute retroactive operation will . . . create a new liability in connection with a past transaction, or invalidate a defense which was good when the statute was passed."[24]  Further, "[e]ven if the Legislature acts to invalidate a prior decision of this Court, the amendment is limited to prospective application if it enacts a substantive change in the law."[25]

While 2005 PA 270 was given immediate effect, nothing in the statutory amendment suggests that the Legislature intended *retroactive* effect.  The phrase "immediate effect" simply refers to Const 1963, art 4, § 27, which provides that "[n]o act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give *immediate effect* to acts by a two-thirds vote of the

---

[22] *Lynch*, 463 Mich at 583.

[23] *Brewer v A D Transp Express, Inc*, 486 Mich 50, 55-56; 782 NW2d 475 (2010); *Franks v White Pine Copper Div*, 422 Mich 636, 670; 375 NW2d 715 (1985).

[24] *Hansen-Snyder Co v Gen Motors Corp*, 371 Mich 480, 484; 124 NW2d 286 (1963).

[25] *Brewer*, 486 Mich at 56, citing *Hurd v Ford Motor Co*, 423 Mich 531, 533; 377 NW2d 300 (1985).

12

members elected to and serving in each house." (Emphasis added.)[26] Use of the phrase "immediate effect" does not at all suggest that a public act applies retroactively.[27]

As we have noted in other cases, "the Legislature has shown . . . that it knows how to make clear its intention that a statute apply retroactively."[28] In this case, that the Legislature knows how to do so is palpably demonstrated by considering a previous amendment of the wrongful-death statute. MCL 600.2922, as amended 1985 PA 93, was ordered to take immediate effect on the date the act was filed, July 10, 1985.[29] In contrast to 2005 PA 270, however, § 2 of 1985 PA 93 expressly provided, in pertinent part, "This amendatory act applies to cases and matters pending on or filed after the effective date of this amendatory act. While the Legislature made clear its intention that 1985 PA 93 take immediate effect on the date it was filed, it also made clear that the amendatory act would be applied retroactively to cases and matters that were pending on the effective date of the amendatory act. We will not ignore that the Legislature did not include language

---

[26] We agree with the opinion that a bill passed by the Legislature, given immediate effect in accordance with Const 1963, art, 4, § 27, and signed by the Governor becomes law upon its filing with the Secretary of State. See OAG, 1983-1984, No 6201, p 230 (January 30, 1984).

[27] Compare *Ludka v Dep't of Treasury*, 155 Mich App 250, 260-261; 399 NW2d 490 (1986) (holding that Const 1963, art 4, § 27 does not require the Legislature to pass legislation by a ⅔ vote in order to make the legislation retroactive).

[28] *Lynch*, 463 Mich at 584, citing MCL 141.1157 ("This act shall be applied retroactively . . . ."); MCL 324.21301a(2) ("The changes in liability that are provided for in the amendatory act that added this subsection shall be given retroactive application.").

[29] Section 3 of 1985 PA 93 conditioned the effective date of the act on the enactment of HB 4486 of the 83rd Legislature. That bill became law 1985 PA 92 and was also filed with the Secretary of State on July 10, 1985.

13

making MCL 600.2922, as amended by 2005 PA 270, retroactive given that a previous amendment of MCL 600.2922 was specifically made retroactive.[30] The Legislature was cognizant of the operative language necessary to apply any particular provision in the amendatory act retroactively but did not include such language in 2005 PA 270.[31] The Court of Appeals improperly held that "MCL 600.2922, as amended by 2005 PA 270, . . . may be applied retroactively from April 1, 2000, the effective date of the last prior amendment of MCL 600.2922 before its amendment in 2005."[32] Had the Legislature intended that 2005 PA 270 apply retroactively, the Legislature could readily have provided that "[t]his amendatory act applies to a cause of action arising on or after April 1, 2000."

---

[30] We also note that the most recent amendment of another statute relevant to this case, MCL 600.2922a, was also given immediate effect. See 2002 PA 164. Again, that indicates that the Legislature by a ⅔ vote expressed an intention that the amendatory act take effect on the date it was filed, April 11, 2002. However, within the language of 2002 PA 164 itself the Legislature provided an enacting section that expressly stated that "[t]his amendatory act applies to a cause of action arising on or after May 1, 2002." While we recognize that the Legislature gave 2002 PA 164 immediate effect and that the amendment was filed on April 11, 2002, we also recognize the Legislature made clear that the amendatory act only applies "to a cause of action arising on or after May 1, 2002."

[31] As an additional example, during the 2005 session, the Legislature passed a law providing for limited immunity from civil liability for guardians ad litem. The law specifically provided, in part, that "[a] guardian ad litem is immune from civil liability for an injury to a person or damage to property if he or she is acting within the scope of his or her authority as guardian ad litem." MCL 691.1407(6), as amended by 2005 PA 318. The law then expressly states that "[t]his subsection applies to actions filed before, on, or after May 1, 1996." *Id.*

[32] *Johnson I*, 290 Mich App at 272.

14

This Court has recognized that "providing a specific, future effective date and omitting any reference to retroactivity supports a conclusion that a statute should be applied prospectively only."[33] This is akin to what the 2005 amendment of the wrongful-death statute does: it provides a specific effective date, that being the date of filing with the Secretary of State, without the slightest hint of retroactive application. The amendment contains no language suggesting that it applies to an antecedent "death as described in section 2922a." Therefore, the amended language applies only to injuries occurring on or after the effective date of 2005 PA 270, December 19, 2005.

Acknowledging the absence of statutory language expressing legislative intent to apply the statute retroactively, both plaintiffs and the Court of Appeals' opinion rely on an "exception" to the presumption that statutes apply prospectively: that "statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intent is manifested."[34] Simply calling a statute "remedial," however, is not enough for retroactive application, as we explained in *Lynch*:

> [W]e have rejected the notion that a statute significantly affecting a party's substantive rights should be applied retroactively merely because it can also be characterized in a sense as "remedial." In that regard, we agree with Chief Justice RILEY's plurality opinion in *White v General Motors Corp*, that the term "remedial" in this context should *only be employed to describe legislation that does not affect substantive rights.* Otherwise, the

---

[33] *Brewer*, 486 Mich at 56, citing *White v Gen Motors Corp*, 431 Mich 387, 398-399; 429 NW2d 576 (1988) (opinion by RILEY, J.) (quotation marks omitted).

[34] *Lynch*, 463 Mich at 584 (citations and quotation marks omitted).

15

mere fact that a statute is characterized as remedial is of little value in statutory construction. Again, the question is one of legislative intent.[35]

This exception to the presumption of prospective application for remedial statutes is inapplicable here because the statutory amendment affects substantive rights. Before the 2005 amendment of the wrongful-death statute, a plaintiff could not bring an action under MCL 600.2922 for the death of a nonviable fetus. Nothing in the language of either MCL 600.2922 or MCL 600.2922a indicated that the death of a nonviable fetus could be redressed under § 2922. Under MCL 600.2922, as amended by 2005 PA 270, the representative of the fetus's estate is now able to file a wrongful-death claim on the basis of the fetus's death.[36] Additionally, MCL 600.2922, as amended by 2005 PA 270, permits plaintiffs to bring claims, as the result of the death of a nonviable fetus, for loss of consortium and other damages unique to the wrongful-death statute that plaintiffs would not otherwise be entitled to bring.[37] The 2005 amendment thus affects the substantive rights of those who would harm or kill a nonviable fetus, as well as the substantive rights of those who bring claims on behalf of a fetus's estate.

---

[35] *Id*. at 585 (emphasis added; citations and quotations marks omitted; formatting altered).

[36] The pregnant woman appears to have a cause of action in her own right under MCL 600.2922a. Under § 2922a, a defendant is liable for damages if his or her acts resulted in a "miscarriage or stillbirth" by the pregnant woman or "physical injury to or death of" the fetus. The pregnant woman's injuries are distinct from those of the fetus, although either a miscarriage or stillbirth has the same result—death of the fetus.

[37] *Sizemore v Smock*, 430 Mich 283, 285, 296 n 24; 422 NW2d 666 (1988) (noting that common-law negligence principles do not permit recovery for the loss of a child's society and companionship, whereas the wrongful-death statute extends a defendant's liability to consortium damages).

Given these considerations, we conclude that the 2005 amendment of MCL 600.2922 does not apply retroactively. The Legislature gave the amendatory act immediate effect without giving any indication that it intended retroactive effect. The amendment affects substantive rights and therefore cannot be given retroactive effect on the basis that it is remedial.[38]

### B. VALID CLAIM UNDER MCL 600.2922a

The Court of Appeals held that the circuit court properly denied defendants' motion for summary disposition under MCR 2.116(C)(8) because Candice alleged that she had "specifically requested the performance of a cerclage and defendants consciously chose to deny the request," and [t]heir conduct in denying the requested care is tantamount to an affirmative act."[39] A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint.[40] All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant.[41] A motion under MCR 2.116(C)(8) may be granted only when the claims

---

[38] The dissent simply does not address whether the language of 2005 PA 270 justifies retroactive application of MCL 600.2922, as amended by 2005 PA 270. Finding that the legislative history supports the dissent's position, the dissent chooses to ignore the dispositive statutory text.

[39] *Johnson I*, 290 Mich App at 273.

[40] *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 380; 563 NW2d 23 (1997).

[41] *Wade v Dep't of Corrections*, 439 Mich 158, 162-163; 483 NW2d 26 (1992).

alleged "are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery."[42]

MCL 600.2922a provides:

> (1) A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus.
>
> (2) This section does not apply to any of the following:
>
> (a) An act committed by the pregnant individual.
>
> (b) A medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and with the pregnant individual's consent or the consent of an individual who may lawfully provide consent on her behalf or without consent as necessitated by a medical emergency.
>
> (c) The lawful dispensation, administration, or prescription of medication.
>
> (3) This section does not prohibit a civil action under any other applicable law.
>
> (4) As used in this section, "physician or other licensed health professional" means a person licensed under article 15 of the public health code, 1978 PA 368, MCL 333.16101 to 333.18838.

We must give effect to the Legislature's intent, and the best indicator of the Legislature's intent is the words used.[43]  We must give every word its plain and ordinary

---

[42] *Id*. at 163.

[43] *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 83; 746 NW2d 847 (2008).

meaning, unless otherwise defined, and may rely on dictionary definitions.[44]   If the language is plain and unambiguous, then judicial construction is neither necessary nor permitted.[45]

MCL 600.2922a(1) provides that a person "who commits a wrongful or negligent act" against a pregnant woman is liable for damages if "the act" results in a miscarriage or stillbirth by that individual or physical injury to or the death of the embryo or fetus. The term "act" commonly means "anything done, being done, or to be done[.]"[46]   The phrases "wrongful act" and "negligent act" also have plain legal connotations.  According to Black's Law Dictionary, the phrase "wrongful act" is synonymous with the phrase "wrongful conduct," which means "[a]n act taken in violation of a legal duty; an act that that unjustly infringes on another's rights."[47]   And Black's Law Dictionary defines "negligent act" as an "act that creates an unreasonable risk of harm to another."[48] Further, Black's Law Dictionary compares the phrase, "active negligence," with the phrase "passive negligence."   The former means "[n]egligence resulting from *an affirmative or positive act*, such as driving through a barrier."[49]   On the other hand,

---

[44] *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156-157; 802 NW2d 281 (2011), citing *Veenstra v Washtenaw Country Club*, 466 Mich 155, 160; 645 NW2d 643 (2002), in turn citing MCL 8.3a.

[45] *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005).

[46] *Random House Webster's College Dictionary* (2001).

[47] Black's Law Dictionary (9th ed), pp 337, 1751.

[48] *Id*. at 28.

[49] *Id*. at 1134 (emphasis added).

19

"passive negligence" means "[n]egligence resulting from a person's failure or omission in acting, such as failing to remove hazardous conditions from public property."[50] The Legislature clearly intended to impose liability for affirmative or positive acts under MCL 600.2922a(1).

In comparison, it is very clear that the Legislature did not intend to impose liability for omissions, something it can and has done in other statutes.[51] The Legislature did not even include the more expansive terms "neglect" and "fault of another" that it included in MCL 600.2922(1), which permit liability on the basis of omissions. The Legislature's decision to exclude omissions from MCL 600.2922a indicates that it did not intend to attach liability to omissions that cause prenatal death or injury. To read the phrase "wrongful or negligent act" as including omissions would expand liability under MCL 600.2922a beyond the Legislature's intent.

In addition, MCL 600.2922a exempts health-care professionals from liability for medical procedures performed either with consent or under emergency circumstances, and from liability for lawfully dispensing and prescribing medication. It would be

---

[50] *Id*. at 1135.

[51] The Legislature has specifically addressed liability for acts *and* omissions in numerous statutes. See, e.g., MCL 3.751, art 7, § a(9) (concerning liability for acts or omissions for those involved in the transport of radioactive waste); MCL 41.711a (eliminating liability for good-faith acts or omissions of emergency personal when rendering care at the scene of an emergency); MCL 52.205(7) (concerning liability for acts or omissions of medical examiners); MCL 333.18826 (concerning liability for acts or omissions of veterinarians and veterinary technicians); MCL 600.2962 (concerning liability for acts or omissions of certified public accountants); MCL 600.5838a(2) (providing that a medical malpractice action generally accrues at time of the act or omission claimed).

incongruous to read the statute as providing liability for negligent omissions when it specifically exempts health-care professionals from liability for their affirmative acts of commission performed within the scope of their practice under MCL 600.2922a(2)(b). Because the statute specifically requires a wrongful or negligent *act,* a wrongful or negligent omission does not impose liability under the statute.

In *People v Thomas*,[52] this Court similarly distinguished between the omission of a duty and an affirmative act. In *Thomas*, a police officer was charged with crimes related to his falsification of a police report, including common-law obstruction of justice, MCL 750.505. The question presented was whether the trial court erred by dismissing the obstruction of justice charge because the alleged conduct fell within the statutory prohibition of failing to uphold the law, MCL 752.11.[53] The relevant statute, MCL 752.11 provided:

> Any public official, appointed or elected, who is responsible for enforcing or upholding any law of this state and who wilfully and knowingly fails to uphold or enforce the law with the result that any person's legal rights are denied is guilty of a misdemeanor.

Just as in this case, the *Thomas* Court found it necessary when reading the relevant statute to "distinguish between the omission of a duty and affirmative acts."[54] We concluded that MCL 752.11 "proscribes the wilful and knowing *failure* to uphold the

---

[52] *People v Thomas*, 438 Mich 448; 475 NW2d 288 (1991).

[53] *Id*. at 450-451.

[54] *Id*. at 454.

law, *acts of omission*."[55]  We also unanimously concluded that falsifying a police report is clearly an act of commission, not an act of omission.[56]

Under the analytical framework laid out in *Thomas*, even assuming that defendant "refused" to perform a procedure,[57] his refusal still could not be characterized as anything other than "wilful and knowing failure to [do something]," language which this Court in *Thomas* unequivocally construed as an act of omission.[58]

Moreover, we cannot accept the dissent's conclusion "that an active decision-making process clearly involves an affirmative act."[59]  This conclusion morphs all willful omissions into commissions.  And even assuming that Pastoriza did refuse to perform a cerclage, his words of refusal did not create any risk of harm.  Rather, as plaintiffs claim, it was Pastoriza's failure to perform a medical procedure that caused the harm, and this alleged *failure* cannot be reasonably characterized as an affirmative act.  The dissent's conclusion that Pastoriza committed an "act" when he "refused to act" is untenable.  A refusal to act is to abstain from action and, therefore, cannot reasonably be considered an act.  In sum, the dissent distorts the express language of MCL 600.2922a, obliterates the

---

[55] *Id*. at 455 (emphasis added).

[56] *Id*. (CAVANAGH, C.J.); *id.* at 458-459 (BOYLE, J., concurring).

[57] Plaintiffs' original complaint alleges that Candice "asked [Pastoriza] to place a cerclage, but he did not do so."  It also alleges that Pastoriza "fail[ed] to perform a cerclage," but it says nothing about his "refusing" to perform a cerclage.  Indeed, it was not until plaintiffs' third amended complaint, filed after the Court of Appeals rendered its decision, that they alleged that Pastoriza "refused" to perform the procedure.

[58] *Id*. at 455.

[59] *Post* at 4.

22

long-recognized distinction between the omission of a duty and affirmative acts, and improperly equates saying "no" with an affirmative act.

Viewing the pleadings in a light most favorable to plaintiff and accepting each and every factual allegation as true, Pastoriza's act was, at most, an omission. Consequently, plaintiffs have failed to state a claim under MCL 600.2922a because defendants did not commit a "wrongful or negligent act." Therefore, the trial court erred by denying summary disposition to defendants.

## VI. CONCLUSION

In sum, we hold that the 2005 amendment of MCL 600.2922(1) does not have retroactive application because (1) the Legislature failed to give any indication that retroactive application was intended, and (2) the amendment affects substantive rights and cannot be given retroactive application on the ground that it is remedial. Therefore, plaintiffs may not proceed under MCL 600.2922. Further, we hold that the text of MCL 600.2922a provides liability only for affirmative acts and does not encompass omissions. In this case, plaintiffs have only alleged an omission or failure to act by defendants; therefore, plaintiffs have failed to state a claim under MCL 600.2922a. We therefore reverse the judgment of the Court of Appeals and remand the case to the trial court for the entry of partial summary disposition in favor of defendants.[60]

Brian K. Zahra
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly

---

[60] Again, this opinion does not affect Candice's separate medical malpractice claim.

23

STATE OF MICHIGAN

SUPREME COURT

CANDICE JOHNSON and BABY
JOHNSON,

        Plaintiffs-Appellees,

v                               No. 142127

RAJAN PASTORIZA, M.D., and RAJAN
PASTORIZA, M.D., P.L.C., d/b/a
WOMEN'S FIRST HEALTH SERVICES,

        Defendants-Appellants.

_____

CAVANAGH, J. (*concurring*).

I concur with the majority's result only. I write separately to emphasize that, because the majority concludes that MCL 600.2922(1), as amended by 2005 PA 270, does not apply retroactively, the majority opinion does not address whether a plaintiff may base a claim for the wrongful death of a nonviable fetus on a defendant's omission occurring after the effective date of the amendatory act. As the majority notes, however, the terms "neglect" and "fault of another" in MCL 600.2922(1) "permit liability on the basis of omissions." *Ante* at 20. Accordingly, it appears that the majority's holding is applicable only to claims for the wrongful death of a nonviable fetus arising out of omissions occurring before December 19, 2005.

                                     Michael F. Cavanagh
                                     Marilyn Kelly

STATE OF MICHIGAN

SUPREME COURT

CANDICE JOHNSON and BABY
JOHNSON,

        Plaintiffs-Appellees,

v                                     No. 142127

RAJAN PASTORIZA, M.D., and RAJAN
PASTORIZA, M.D., P.L.C., d/b/a
WOMEN'S FIRST HEALTH SERVICES,

        Defendants-Appellants.

_____

HATHAWAY, J. (*dissenting*).

At issue is the extent of liability imposed under two statutes, MCL 600.2922a and MCL 600.2922, for wrongful or negligent acts against a pregnant woman that result in injuries to or the death of a fetus. The majority holds that plaintiffs' claims for negligence brought under MCL 600.2922a, which provides a cause of action for injuries to or the death of a fetus, fail as a matter of law. The majority believes that MCL 600.2922a only imposes liability for negligent conduct when the conduct complained of consists of an "affirmative" act rather than an "omission." The majority further holds that claims brought under the wrongful-death statute, MCL 600.2922, as amended by 2005 PA 270, fail because the majority believes that the 2005 amendment of the statute, incorporating the death of a fetus, is not retroactive. Because I find both of these conclusions erroneous, I respectfully dissent.

The underlying claims in this case involve allegations of negligence resulting in the death of plaintiff Baby Johnson,[1] as well as injuries to his mother, plaintiff Candice Johnson. Ms. Johnson had a history of miscarriages resulting from a condition known as an incompetent cervix. Treatment for this condition includes placement of a cerclage, which involves suturing the lower end of the uterus to strengthen it and prevent miscarriages. Ms. Johnson had multiple previous pregnancies, and in each pregnancy in which a cerclage was not placed, she miscarried; however, in her last three pregnancies, a cerclage was used, and she was able to carry her children to full-term. Defendant Rajan Pastoriza, M.D.,[2] was briefly involved in Ms. Johnson's last pregnancy and had removed the cerclage before the successful birth of her last full-term child.

Ms. Johnson became pregnant with Baby Johnson in June 2005 and chose defendant as her obstetrician. In September 2005, Ms. Johnson began bleeding vaginally and went to Foote Hospital, where she was advised to follow up with defendant. Defendant failed to place a cerclage during that follow-up visit. Ms. Johnson continued treatment with defendant as instructed, but he never placed a cerclage, despite ultrasound findings that Baby Johnson was the appropriate gestational age for placement of a

---

[1] This action was originally filed in the name of two plaintiffs, Baby Johnson and Candice Johnson. The complaint was subsequently amended, identifying the decedent, Baby Johnson, as Ordane Michael Johnson, and adding a count on behalf of the estate of Ordane Michael Johnson. To avoid confusion, I refer to the decedent as Baby Johnson.

[2] Plaintiffs brought suit against Dr. Rajan Pastoriza, M.D., in his individual capacity and against his professional corporation. Plaintiffs' allegations center on the actions of Dr. Pastoriza in his individual capacity. Accordingly, I use the singular term "defendant" throughout this opinion for ease of reference.

cerclage. On October 19, 2005, Ms. Johnson complained to defendant that she felt preterm labor-like cramping. On this occasion, she specifically asked defendant to place a cerclage, but he refused to do so.

On November 1, 2005, Ms. Johnson went into premature labor. She was transferred to Sparrow Hospital where an emergency cerclage was placed. However, the cerclage failed to prevent the miscarriage. Baby Johnson was delivered at 20 weeks' gestation and did not survive. Plaintiffs alleged that the cerclage was placed too late to be effective in preventing the miscarriage and that Baby Johnson died as a result of defendant's refusal to place the cerclage at an earlier time. Ms. Johnson also alleged that the failed emergency cerclage caused a significant and permanent cervical tear that will prevent her from having any more children.

Only counts II and III of plaintiffs' third amended complaint are at issue in this appeal.[3] Count II, brought by Ms. Johnson, is based on MCL 600.2922a, which provides for liability for injuries to or the death of a fetus caused by a wrongful or negligent act against a pregnant individual. Count III, on behalf of Baby Johnson, was brought under MCL 600.2922a and the wrongful-death statute, MCL 600.2922. The trial court denied defendant's motions for summary disposition, and the Court of Appeals affirmed. I believe that the trial court and the Court of Appeals reached the correct result with respect to both of these issues.

---

[3] Count I, alleging medical malpractice for Ms. Johnson's injuries, is not at issue in this appeal. Additionally, the majority's opinion does not address Ms. Johnson's claim for emotional-distress damages. See *ante* at 3 n 2. The Court of Appeals ruled in favor of Ms. Johnson on the issue of whether she can recover emotional-distress damages. The majority opinion does not affect that ruling.

With regard to the claims brought under MCL 600.2922a, the majority opines that those claims fail as a matter of law because it believes that this statute only imposes liability for negligent or wrongful conduct consisting of an *affirmative act*, rather than an *omission*. I disagree with the majority's conclusion that the conduct complained of in this case was an omission. Instead, defendant's conduct involved affirmative acts. As such, it is unnecessary to reach the issue whether liability can be based on an omission under this statute.

MCL 600.2922a(1) provides in relevant part:

> A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus.

According to the plain language of this subsection, the relevant inquiry is whether a person has committed a wrongful or negligent act against a pregnant individual. This case involves conduct, consisting of medical treatment by a physician, which is alleged to be "wrongful" or "negligent." The specific allegation is that Ms. Johnson needed a cerclage, defendant was aware of her need for the procedure, and he made a conscious decision not to perform that treatment. On one occasion, after having been asked to place the cerclage, defendant specifically refused to perform the procedure. Thus, the salient question is whether a defendant's active decision-making process in refusing to perform a necessary and specifically requested medical procedure is properly characterized as an omission or whether it is, in fact, an affirmative act. I believe that an active decision-making process clearly involves an affirmative act.

4

To hold otherwise ignores the language of the statute and the obvious intent of the Legislature. MCL 600.2922a imposes liability when a person "commits a wrongful or negligent act . . . ." This defendant committed "an act" when he consciously and actively refused to perform the procedure. An active, conscious decision is not an omission. Thus, I agree with the Court of Appeals' conclusion that "[i]t is improper in this instance to classify defendants' alleged conduct as an omission" and that "conduct in denying the requested care is tantamount to an affirmative act."[4] Accordingly, I believe that plaintiffs' claims under MCL 600.2922a may proceed.

The majority also addresses the claims brought under the wrongful-death statute on behalf of the estate of Baby Johnson. The relevant portion of the wrongful-death statute, MCL 600.2922(1), as amended by 2005 PA 270, currently provides in pertinent part:

> Whenever the death of a person, injuries resulting in death, *or death as described in section 2922a* shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or *death as described in section 2922a*, and although the death was caused under circumstances that constitute a felony. [Emphasis added.]

At the time of the alleged negligence, MCL 600.2922(1) did not include the language regarding "death as described in section 2922a," which is now twice cross-referenced in this subsection. This amendatory language was added in 2005 to

---

[4] *Johnson v Pastoriza*, 290 Mich App 260, 273; 810 NW2d 42 (2010).

specifically incorporate fetal deaths into the purview of actionable claims that can be pursued under the wrongful-death statute. The effective date of the amendatory act was in December 2005, the month following the death of Baby Johnson. The majority opines that because the negligent acts complained of occurred before the effective date of the amendatory act, the claims for Baby Johnson must fail because the amendatory act was not retroactive. I disagree. I believe that the Court of Appeals correctly analyzed this issue and properly found that the amended version of the wrongful-death statute applies retroactively.

To determine whether a statute should be applied prospectively or retroactively, the primary rule is that the intent of the Legislature controls, and all other rules of construction are subservient to this rule. *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001). Generally, statutes are presumed to operate prospectively unless a contrary intent is expressed. *Id.* However, there is a long-recognized exception when a statute is deemed remedial or procedural in nature. *Hansen-Snyder Co v Gen Motors Corp*, 371 Mich 480, 484-485; 124 NW2d 286 (1963). "Statutes which operate in furtherance of a remedy already existing and which neither create new rights nor destroy existing rights are held to operate retrospectively, unless a contrary legislative intention is manifested." *Selk v Detroit Plastic Prod*, 419 Mich 1, 10; 345 NW2d 184 (1984).

The 2005 amendment of MCL 600.2922(1) incorporated fetal deaths, as described in MCL 600.2922a, into the purview of the wrongful-death statute. By amending MCL 600.2922(1), the Legislature did not create a new right because the right to bring a cause of action based on wrongful or negligent acts that resulted in the death of a fetus already

6

existed under MCL 600.2922a. This clearly delineated statutory right contained in MCL 600.2922a was seemingly disregarded or at least overlooked in *McClain v Univ of Mich Bd of Regents*, 256 Mich App 492; 665 NW2d 484 (2003). *McClain* held that an action for wrongful death could not be brought on behalf of a nonviable fetus. The Court opined that because a nonviable fetus is not a "person" within the meaning of the wrongful-death statute, such an action could not proceed. *Id.* at 495. However, *McClain* failed to address or acknowledge the rights embodied in MCL 600.2922a, which permits a cause of action for injuries to or the death of a fetus irrespective of whether the fetus was viable. In doing so, *McClain* effectively abrogated the rights given to nonviable fetuses in MCL 600.2922a. Thus, it appears that the purpose of the 2005 amendment was merely to clarify the legislative intent that a cause of action could be brought on behalf of a nonviable fetus.

This conclusion is buttressed by the following legislative history[5] from the House Fiscal Agency's analysis of the amendatory act:

> Prior to 1998, the Michigan law did not specifically speak to the right of an individual to sue if the death in question was that of the unborn. Historically, lawsuits through the years went back and forth, sometimes applying regardless of gestational age, then more recently, being limited to instances in which the fetus was viable. Legislation in 1998 sought to settle the question by establishing both civil liability and criminal penalties for conduct against a pregnant woman that caused a miscarriage or stillbirth or that caused physical injury to the embryo or fetus (Public Act 211 – civil and Public Act 238 – criminal).

---

[5] An analysis of a statute's legislative history is an important tool in ascertaining legislative intent. *Bush v Shabahang*, 484 Mich 156, 168; 772 NW2d 272 (2009); *In re MCI Telecom Complaint*, 460 Mich 396, 415; 596 NW2d 164 (1999).

7

The language establishing the civil penalty was placed in a separate section (MCL 600.2922a) from the existing wrongful death provision (MCL 600.2922) as a compromise between pro-life and pro-choice advocates. Since Section 2922 specifies a right to recover damages for the wrongful death of a "person," pro-choice advocates voiced a concern that including conduct against a pregnant woman in that section would, by association, attach "personhood" to a fetus or embryo and subsequently could be used to attack laws protecting reproductive rights.

Many thought the 1998 legislation was clear, but a 2000 Oakland County case proved otherwise. The Oakland County Circuit Court ruled that a man who had killed his pregnant wife could not be charged with the death of his wife's embryo because his actions did not "technically" result in either a miscarriage or a stillbirth as the embryo was not expelled from the wife's body. As a result, Public Act 2 of 2001 and Public Act 164 of 2002 were enacted to amend the Michigan Penal Code and the wrongful death statute, respectively, to extend the criminal and civil penalties to conduct causing the <u>death</u> of an embryo or fetus. It was believed at the time that Public Act 164 closed the loophole in the wrongful death statute and so would apply to all situations in which conduct toward a pregnant woman resulted in the death of the embryo or fetus she carried.

However, in subsequent civil actions, courts around the state have apparently only looked at Section 2922 of the wrongful death statute and not Section 2922a. Most notably, in *McClain* v *University of Michigan Board of Regents*, 256 Mich App 492 (2003), the court held that "under Michigan law, an action for wrongful death, MCL 600.2922, cannot be brought on behalf of a nonviable fetus, because a nonviable fetus is not a 'person' within the meaning of the wrongful-death act."

*Once again, it has become clear that legislation is needed to clarify the legislature's intent of providing a cause of action for the wrongful death of not only a person, but also an embryo or fetus.*[6]

These comments make clear that this amendment was intended to clarify that claims for the wrongful death of a nonviable fetus may be pursued under the wrongful-death statute. The amendatory act did not establish any new rights because the right to

---

[6] House Legislative Analysis, HB 4777, October 24, 2005, p 1 (emphasis added).

8

pursue an action for the death of a fetus already existed under MCL 600.2922a. The 2005 amendment of the wrongful-death statute was only adopted to resolve the confusion created by *McClain* regarding whether a claim may be brought for the death of a nonviable fetus.

Thus, I agree with the Court of Appeals' conclusion that "it is clear that MCL 600.2922 was amended to add the language 'or death as described in section 2922a' in order to clarify both MCL 600.2922 and MCL 600.2922a and to resolve a controversy regarding their meaning."[7] Under these circumstances, I am persuaded that the Legislature intended the amended version of the wrongful-death statute to apply retroactively. As such, Baby Johnson's estate, as a matter of law, is entitled to proceed with its wrongful-death claim. Whether plaintiffs' allegations will ultimately prevail on the merits involves issues to be resolved by a jury.

Therefore, I believe that the trial court's denial of defendant's motions for summary disposition was proper. I would affirm the Court of Appeals. Accordingly, I dissent.

                                        Diane M. Hathaway

---

[7] *Johnson*, 290 Mich App at 271.